UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION


UNITED STATES OF AMERICA,            :        DOCKET NO. 05-60040-01
                                     :
                  Plaintiff,         :
vs.                                  :        July 28, 2006
                                     :
KEITH ROMAN HENDERSON,               :
                                     :
                  Defendant.         :        Lafayette, Louisiana
_____


REPORTER'S OFFICIAL TRANSCRIPT OF THE SENTENCING HEARING
BEFORE THE HONORABLE TUCKER L. MELANCON
UNITED STATES DISTRICT JUDGE.


APPEARANCES:

FOR THE PLAINTIFF:               BRETT L. GRAYSON
                                 Assistant United States Attorney
                                 800 Lafayette Street, Ste. 2200
                                 Lafayette, LA  70501

FOR THE DEFENDANT:               PETER QUESTAVERD JOHN
                                 O'Neal Legal
                                 2900 Westfork Dr., Ste. 200
                                 Baton Rouge, LA  70827


REPORTED BY:                     LARAE BOURQUE, RPR, CRR
                                 United States Court Reporter
                                 800 Lafayette Street, Ste. 3103
                                 Lafayette, Louisiana  70501

```
 1                    P R O C E E D I N G S

 2            THE COURT:  All right.  The next matter in the related

 3   case is Criminal Docket Number 05-60040-01, *United States of*

 4   *America vs. Keith Roman Henderson*.  This matter is also before

 5   the Court for the sentencing of the defendant based on a

 6   previously rendered guilty verdict after trial.

 7            And at this time I would ask the lawyers involved in

 8   the case, starting with the Assistant United States Attorney

 9   representing the government, to identify themselves for the

10   record.

11            MR. GRAYSON:  Brett Grayson for the United States.

12            MR. JOHN:  Good morning, Your Honor.  Peter John for

13   Mr. Keith Henderson.

14            THE COURT:  All right.  Mr. John, are you and your

15   client ready to proceed with sentencing?

16            MR. JOHN:  Yes, Your Honor.

17            THE COURT:  If you would come up to the lectern.

18            And, Mr. John, have you and your client received and

19   reviewed a copy of the presentence report that was prepared in

20   this matter?

21            MR. JOHN:  Yes, Your Honor.

22            THE COURT:  And, Mr. Grayson, has the government?

23            MR. GRAYSON:  The government has, Your Honor.

24            THE COURT:  Now, based on the information that the

25   Court has been provided with, there have been no objections filed
```

1    by either the defendant or the government.

2              Is that true, Mr. John?

3              MR. JOHN:  Yes, Your Honor.

4              THE COURT:  Is that true, Mr. Grayson?

5              MR. GRAYSON:  It is, Your Honor.

6              THE COURT:  Are there any corrections, alterations or

7    additions that either of you would like to make to the

8    presentence report?

9              Mr. John.

10             MR. JOHN:  Yes, Your Honor.  I believe that in looking

11   at the presentence report, the sentencing guidelines under

12   Section 6A1.3 suggest that in order to focus the issues prior to

13   sentencing, we're required to respond in writing and to identify

14   issues in dispute.  I read that literally.

15             I do not have any issues that's in dispute,

16   particularly factual issues as it refers to in the text of the

17   guideline.  We do have some legal -- some legal arguments, and we

18   do have some issues that we'd like to address with the Court in

19   terms of the way the report was put together.

20             THE COURT:  All right.  Let me ask you this, Mr. John,

21   just so I'm clear and the record reflects.  There's no formal

22   objection to the presentence report.  The issues that you want to

23   bring to the Court's attention, will they in any way change the

24   United States Sentencing Commission Guidelines set out in the

25   presentence report which this Court must consider in fashioning a

1    reasonable sentence for your client?

2            MR. JOHN:  Your Honor, I believe that when you analyze

3    the preponderance of the evidence, which actually specifically

4    it's an indicia of reliability is what the guideline says which

5    has been interpreted by the Commission to be a preponderance of

6    the evidence, I believe that the government has met that standard

7    in everything that was placed in the report.  Particularly we're

8    talking about the criminal history category, how that was

9    compiled, the two points plus two more points for probation --

10   for an offense committed while under probation.

11           In addition, the calculation for relevant conduct of

12   11.3 kilos, both of those were based on an indicia of information

13   that we saw no objection to raise in that form under the way it's

14   structured, but, beyond that, we are concerned about the

15   constitutional violence that was done to my client's right of

16   confrontation and that's where our -- and our rights to not

17   incriminate himself in trial.

18           We're put in a position where you can't even fight your

19   way out of it simply because if my client gets up and testifies,

20   then, you know, that's where the evidence would come to weigh

21   that preponderance or that indicia of reliability.

22           THE COURT:  Stop, Mr. John, because you're losing me

23   here.  We had a trial.  As I recall, and I may be wrong, but I

24   think your client exercised his Fifth Amendment right not to

25   incriminate himself or be compelled to incriminate himself and he

1    chose not to take the stand.  Okay?  So he did that.

2         Now, where is it that he's damned if he does and damned

3    if he doesn't as far as him having to incriminate himself at this

4    juncture at a sentencing hearing?

5         MR. JOHN:  Well, Your Honor, if we honed in on that one

6    narrow issue to say you are calculating this incorrectly, what

7    you're stating is incorrect, it would open a lane as wide as a

8    four-lane highway to attack other issues which strategically we

9    needed to be able to protect.

10        So what you have is a structure where the indicia and

11   the preponderance trap is laid at trial because that hearsay

12   comes in, and if you're trying to protect the rest of your case,

13   there's no way you can attack that one fact of how this

14   calculation was made.

15        If someone says I bought from someone 200 times,

16   there's no way on earth a competent defense attorney would say,

17   okay, I'm going to put you on the witness stand to say you didn't

18   see him 200 times because there's just not enough days in the

19   year.

20        THE COURT:  Well, Mr. John, let's suppose I'm running

21   with you on that despite all our history.  What would you propose

22   would be the solution to that problem?

23        MR. JOHN:  Well, Your Honor, again, if I present in a

24   fashion that says, well, I object to the legal aspect, the legal

25   rubric, then that's really not the truth because there is an

1   indicia.  The indicia was brought into whatever was said at

2   trial.  There is an indicia.

3          The reliability is the ruling of the Court, and we're

4   asking that the Court consider that the way *Blakely* is being

5   applied, being used, it puts us in a damned if you do, damned if

6   you don't, and all we can do now at sentencing is try to attack

7   the evidence again keeping in mind that the --

8          THE COURT:  But, Mr. John, again -- and I'm not sure

9   I'm exactly following everything you're trying to say to me, but

10  here we are.  We're at sentencing.  There's no objection been

11  filed to the sentencing report by either you or the government.

12         How we got down this path was I said if I listen to you

13  and give you -- I mean, I'm not sure what you're asking yet, but

14  if I went with you on that, does it affect the Sentencing

15  Commission Guidelines that this Court must consider in fashioning

16  a reasonable sentence realizing full well, as the Court does,

17  that there is a mandatory minimum sentence in this case, but --

18         MR. JOHN:  It doesn't affect it.  This is just legal

19  argument, Your Honor.  We're asking the Court look and see that

20  the reliability is compromised, generally speaking, because

21  you've got to give something up that's a bigger puppy than to

22  attack that one.  We're damned if we do and damned if we don't to

23  attack that particular fact from getting in and being used as the

24  basis for the -- what the sentencing guideline requires.

25         We feel that the basis was established based on the way

1    it was done, but we don't feel that's the right thing -- we

2    didn't have a choice to have someone -- have my client testify to

3    attack that at that point and then later come back and say that

4    you could have considered it differently.

5              THE COURT:  Okay.

6              MR. JOHN:  And what I'm referring to is *Watts*

7    (phonetic) and *Peddie* (phonetic).  *Watts* is a '97 case that went

8    to the Supreme Court and *Peddie* is a '93 case in the Ninth

9    Circuit.  Both of them said that the lower evidentiary standard

10   in sentencing permits a court to consider acquitted conduct.

11   Realizing as a defense attorney if you file an objection that

12   says that you couldn't consider that conduct because, you know,

13   we know --

14             THE COURT:  Mr. John, again, I'm going to let

15   Mr. Grayson speak because I see him rise, but, again, there are

16   no objections before this Court, and you have indicated,

17   Mr. John, that if I gave you what you wanted, it really wouldn't

18   change the guideline range that the Court must consider.  Isn't

19   that true?

20             MR. JOHN:  Yes, Your Honor.  That's what we've

21   admitted.

22             THE COURT:  Mr. Grayson, do you have something to say?

23             MR. GRAYSON:  Well, Your Honor, I'm not really sure

24   what he's objecting to and saying that he's not objecting, but if

25   there's anything that affects the guidelines, then it will have

1    an effect on the sentence because the mandatory penalty with

2    regard to this count is 20 years.  The guidelines is beyond 20

3    years.

4              THE COURT:  Okay.  I think I'm clear, but maybe I'm

5    not.  I want to make sure we're all on the same page, all three

6    of us, that you said, Judge, one, it won't affect it, and, two, I

7    don't have an objection before you, but I'm making legal

8    arguments.

9              MR. JOHN:  Yes, Your Honor.

10             THE COURT:  Okay.

11             MR. JOHN:  Other than that, Your Honor, we looked at

12   the two underlying prior criminal convictions and we've had no

13   objections to that, and as I maintain, we believe that the

14   presentence report comported with the U.S. Sentencing Guidelines

15   in those ways.

16             THE COURT:  Okay.  Is that it?

17             MR. JOHN:  Yes, Your Honor.

18             THE COURT:  Mr. Grayson, anything you want to say in

19   addition to what you've said?

20             MR. GRAYSON:  At some point, Your Honor, we need to

21   have that same 851 issue about the defendant admitting or

22   denying.

23             THE COURT:  And, you know, Mr. Grayson, I apologize for

24   jumping right into the sentencing.  Again, my error.  Let's --

25   and, again, I'm digressing now from the sentencing hearing going

```
1    back to the 851 hearing.

2            Mr. John, I think as you saw and as I'm sure you knew

3    before today in your client's brother's case, you know, it's been

4    teed up by the filing of the motion.  Does your client admit or

5    deny the previous conviction?

6            MR. JOHN:  Your Honor, we have addressed that

7    previously.  We admit that those convictions are what they've

8    been notified to be.

9            THE COURT:  All right.  Well, the Court finds, based on

10   that admission, that the government is entitled to the

11   enhancement.

12           All right.  I think I've resolved that issue, Mr. John,

13   have I not?

14           MR. JOHN:  Yes, Your Honor.

15           THE COURT:  Mr. Grayson, have I not now by what we just

16   did?

17           MR. GRAYSON:  Yes, Your Honor, but it's --

18           THE COURT:  You want to make -- for the record you want

19   to state what's in the record for me.  He's admitted it.

20           MR. GRAYSON:  Well, Your Honor, he has a single prior

21   conviction for which he was on probation at the time this case

22   was made by the DEA.  So he has one prior felony drug conviction,

23   not two.

24           THE COURT:  All right.  And, again, that is in the

25   record, Mr. Grayson.  It was previously filed in this matter.
```

1           MR. GRAYSON:  The copy of the conviction record was

2     filed into -- conviction records from the state court were

3     attached to the government's notice and is filed in the record.

4           THE COURT:  And, Mr. John, that is the conviction that

5     you, on behalf of your client, have admitted to here today; is

6     that correct?

7           MR. JOHN:  Yes, Your Honor.

8           THE COURT:  All right.  So as I stated previously, the

9     government is entitled to the enhancement based on the motion it

10    filed and the defendant's admission and the record of this

11    proceeding.

12          All right.  Now, I'm going to go back now into the

13    sentencing hearing now, Mr. John.  Is there anything else you

14    would like to say in response -- I mean, to say further as it

15    relates to the legal argument, not objection, but legal argument

16    you made or are you finished?

17          MR. JOHN:  I'm through.  Your Honor, I believe my

18    client does have something.

19          THE COURT:  All right.  I'm going to allow him to do

20    that shortly.  I'm going to get him to do that, but as far as the

21    legal argument, not an objection, the way it was characterized,

22    legal argument, is there anything else you want to say?

23          MR. JOHN:  Your Honor, under the Section 6A1.3, factual

24    objections is what's called for.  We didn't think anything was

25    material enough, because working in this court, we understand

1    that the bottom line is going to come back to what does the

2    statute say, what does the commission say and what does the law

3    say, and the law says indicia of reliability and preponderance of

4    the evidence.

5              We filed no objection because we believe that when you

6    boil it back down to that, there's nothing in this presentence

7    report that wasn't brought up before and has a basis, a leg to

8    stand on.  What the Court does is up to the Court.

9              So based on what, there is no objection that we believe

10   would affect the outcome of the guidelines, and all we have to

11   present today is some arguments about the way this thing is

12   working post-*Blakely* for the record.

13             THE COURT:  All right.  Mr. Grayson, anything else you

14   want to say?

15             MR. GRAYSON:  Since there are no objections, Your

16   Honor, no.

17             THE COURT:  All right.  Let me just say for the

18   sanctity of the record, to the extent there was an objection or

19   it might be construed as an objection, the Court will overrule

20   that objection.

21             Anything else related to the presentence report, any

22   alterations or corrections, Mr. John?

23             MR. JOHN:  No, Your Honor.

24             THE COURT:  Anything from the government, Mr. Grayson?

25             MR. GRAYSON:  No, Your Honor.

```
1              THE COURT:  Now, it is my belief, Mr. John, that you

2    have filed on behalf of your client a motion for a new trial,

3    too.  Is that correct?

4              MR. JOHN:  Yes, Your Honor.

5              THE COURT:  Well, at this time the Court will deny that

6    motion, and the Court will go ahead and adopt the factual

7    statements in the presentence report as its findings of fact.

8              Now, Mr. John, is there anything that you would like to

9    say or offer in mitigation of punishment before sentence is

10   imposed?

11             MR. JOHN:  Yes, Your Honor.

12             The defendant's mother is here and she would like to

13   offer some background information on the defendant that was not

14   included in the report that she indicated to me she would like to

15   do today.  Other than that, the defendant would like to speak.

16             THE COURT:  All right.  I'm going to certainly let the

17   defendant do that, but Mr. John -- and I have to ask you this.

18   I'm not going to stop Ms. Henderson from coming up here and

19   saying what she feels compelled to say.

20             I said earlier in Mr. McLindon's client's case to him,

21   I cannot imagine being 30 years old and just getting a life

22   sentence.  It's beyond my comprehension at age 60, but as hard as

23   that would be, I can definitely not imagine how Ms. Henderson

24   must feel with two of her sons in the predicament that your

25   client and Mr. McLindon's client were.
```

1          So if she wants to say anything, she can, but if it's

2     nothing more than an appeal for mercy, I don't know if that would

3     serve a useful purpose, but I don't want -- I don't want to stop

4     her from having an opportunity to say what it is she'd like to

5     say.

6          So, Ms. Henderson, if you'd like to come on up here,

7     you may do so.

8          MR. JOHN:  Your Honor, based on my looking back and

9     making a visual contact, the Court has characterized it

10    correctly.  It would be an additional appeal for mercy.  It would

11    be background information.  Again, based on the way the rubric of

12    this situation is working, I don't think that it's going to

13    change anything, but I have to bring it up.

14         THE COURT:  Absolutely.  And, again, I want to give

15    Ms. Henderson the opportunity to come up here and speak if she

16    wants to.

17         Ms. Henderson, if you want to do that, please come on

18    up here now.  I'm not trying to get you to do something you don't

19    want to do, but I've said what I said.  As I said in your

20    previous son's case, this is the worst part of my job.  I don't

21    like being in this position here today.

22         All right.  Now, if you would, ma'am, would you please

23    state your name for the record.

24         MS. HENDERSON:  Brenda Henderson.

25         THE COURT:  Now, Ms. Henderson, here's your opportunity

1    to tell me whatever you think you should say about your son.

2            MS. HENDERSON:  Your Honor, Keith had a rough time in

3    life because he been in a mental institution.  Keith is suicidal,

4    which none of this was brought up.  Lionel and Keith both have

5    four children apiece under seven years old.

6            Yeah.  I'm pleading for the mercy of my children

7    because those are the only two boys I got.  My children didn't

8    kill nobody.  They didn't rape nobody, didn't rob nobody.  I'm

9    not saying what they did was right and I'm not saying what they

10   did was wrong.  I'm saying I don't see why y'all have to spend my

11   children's life in prison.

12           I'm only their mama.  I'm trying to be strong.  I'm a

13   poor black woman.  I don't have nothing.  Yeah.  I'm asking mercy

14   on the Court.  There's a lot of things Your Honor don't know.

15   Keith can't read.  Keith can't write.  If God forgive us and look

16   beyond our faults, why can't we as brothers and sisters look

17   beyond our faults.

18           Thank you, Your Honor.

19           THE COURT:  Well, Ms. Henderson, I need to address what

20   you raised so you'll understand to the extent that I, as one

21   human being, can get what's in my head and in my heart to your

22   head and to those other family members here.

23           You said that your sons didn't kill anybody or rape

24   anybody and that's true, but I want you to know after being a

25   judge for almost 13 years -- and that's what I alluded to

1    earlier -- that I have seen many people, mainly

2    African-Americans, die as a result of drugs, the kind of activity

3    that your sons were convicted of.

4          The Congress of the United States has said this is the

5    way we're going to proceed, and as a judge of the United States,

6    my only role is to follow the law that the Congress makes and the

7    constitution of our country as best I understand those to be.

8          That's what I meant when I said, you know, if you come

9    for mercy, I'm not in a position now where I can give mercy.

10   Even if I were inclined to do so, that's not the role that the

11   judge plays.  The judge doesn't make the law.  The judge follows

12   the law.

13         And, again, I don't want to beat up on either of your

14   sons.  Like I told Lionel, they had several hours with their

15   lawyers and Mr. Grayson, the only chance they had to help

16   themselves probably and they chose not to do it.  And, again, I

17   can't do anything based on what they -- the action they took

18   because Mr. Grayson is not going to file anything.  That's the

19   law.

20         And Mr. Grayson is like me.  He's doing the best he can

21   as he sees his duty under the law, but the Congress has made it

22   that way.  It's not like I can do anything I want or frankly

23   Mr. Grayson can do anything he wants.  We both took the same oath

24   to follow the law.

25         And, you know, I don't know if I conveyed to you my

1    sincere feeling and my regret to have to be society's voice here

2    today to do what I have to do.  I don't like this, but it is our

3    law.

4            And, again, like I said earlier, maybe the only good

5    that's going to come out of this, Ms. Henderson, is other people

6    in the family or friends in the community will say, my God, this

7    is serious stuff.  It's not like going to state court and getting

8    a little slap on your wrist, because, you know, both your boys

9    have a lot of slaps on the wrist.

10           Again, that's not why they're getting the sentence they

11   did, but I know that.  You know they've had run-ins with minor

12   stuff, but when they got in trouble with drugs, it was just kind

13   of a slap on the wrist.  Well, they got in the wrong situation

14   here in federal court with what they were convicted of doing and

15   I don't know how else to say it.

16           If there's anything else you want to say, you may do

17   so, and if there's not, thank you, ma'am.

18           MR. JOHN:  Thank you, Your Honor.

19           THE COURT:  Yes, sir.

20           Mr. Henderson would like to say something now.  You may

21   do so, sir.

22           THE DEFENDANT:  How are you doing, Your Honor?  It's

23   been a long process.  A lot of things kind of weird to me, you

24   know.  I can't read.  I can't write good.  I don't got a good

25   memory.  I don't understand a lot of things.

 1          This is my first time ever coming through the federal

 2    system, and by me coming through this here and listening to the

 3    people talk is like a whole different language to me.  I don't

 4    understand nothing that's going on here.

 5          And I just ask that -- I got four kids out there, you

 6    know.  I got responsibility.  And I've got one daughter I never

 7    even saw yet.  She was born since I been incarcerated.  And I

 8    just -- I don't understand like on the PSI where they use -- I

 9    think it was eleven kilograms cocaine base.  Ain't no way

10    possible that, you know, Mr. Legarde could state that, you know,

11    that we was selling that kind of cocaine.  I mean, everybody --

12    the jury know that Mr. Legarde's testimony -- I mean, it's hard

13    for me to plead guilty to something that I know I didn't commit.

14          I mean, I had no choice but to go this way.  I mean, I

15    read my PSI, my 292 I think to 365, and to tell you the truth,

16    Your Honor, if that's what I get sentenced to today -- I mean,

17    what's left?  Ain't no more life.  It's over.  And that's about

18    all I have to say.

19          THE COURT:  Well, Mr. Henderson, let me say in response

20    that you exercised your constitutional right to a trial.  I don't

21    fault you for that.  I certainly wouldn't want you or any other

22    person that ever appeared in this courtroom to plead guilty to

23    something that they weren't guilty of.

24          However, the point I made about the work your lawyer

25    tried to do with the government lawyer, Mr. Grayson, was to place

1    you in as good a position under the law that I have to follow in

2    a case like this after you were convicted by a jury.

3              And, you know, I don't fault you for exercising your

4    right to a trial.  That's the great right we all have, but the

5    jury spoke, and based on what the jury did and the position that

6    you're in now, the law is real clear.

7              I can only hope that unlike your poor brother -- and I

8    didn't receive a letter from you and I understand you may not be

9    able to write very well.  I think your brother -- and, again, I

10   could be wrong because I've never gotten a letter or gotten very

11   few letters from people who didn't say they got a spiritual

12   awakening or something.

13             I hope you can lean on your faith, whatever that faith

14   may be.  I hope you use your time, whatever time you end up

15   getting in the federal penitentiary, to make yourself -- whether

16   it's learning to read or write or learn a new trade because there

17   will be a day -- and it's a long time -- that you will be out on

18   the streets again if you live a normal life.  Your brother

19   doesn't have that opportunity.

20             Now, again, at your age I can't imagine what you're

21   getting ready to face, and I'm not unmindful when I sentence you

22   that I'm sentencing not only your four kids, but a lot of these

23   other folks out here who love or care about you, but that's

24   really not my role.

25             And the conduct that you were convicted of by a jury is

1    what did that to you.  It's not -- even though I'm society's

2    voice right now, it's not Judge Melancon that did that.  And, you

3    know, I feel for you as one human being to another.  I do.

4    There's nothing under the position you placed yourself in at your

5    young age that I can do right now.  Now, I just want you to know

6    that.  I want to say again for your family that that's the way it

7    is.  That's the law and that's the oath I took.

8          So if there's anything else you would like to say, you

9    should feel free to do that right now, Mr. Henderson.

10          THE DEFENDANT:  No.  I'm finished.

11          THE COURT:  Okay.  I'd like to see the probation

12    officer over here.

13                  (CONFERRING)

14          THE COURT:  All right.  The Court finds that the

15    applicable Offense Level is 38.  The applicable Criminal History

16    Category is III.  The provisions of 21, U.S.C., 841(b)(1)(A),

17    based on the Court's finding and granting the government's motion

18    as it relates to prior conviction, there was a mandatory minimum

19    sentence of 20 years.  However, the guidelines provide for as to

20    Counts 1, 2 and 3 a guideline range of 292 to 365 months.

21    Supervised release as to Counts -- and that's as to each count,

22    1, 2 and 3.

23          Supervised release as to Counts 1, 2 and 3, at least

24    ten years per count.  Probation is not authorized.  A fine per

25    each count, 1, 2 and 3, of $25,000 to eight million dollars per

1    count.  Restitution is not applicable.  And a special assessment

2    fee of one hundred dollars per count -- that's for each count --

3    for a total special assessment of three hundred dollars.

4            The reasons for these guideline determinations are set

5    forth in the presentence report which the Court finds addresses

6    the criminal conduct in question.

7            Now, it is the judgment of the Court that as to Count 1

8    the defendant, Keith Roman Henderson, is committed to the custody

9    of the Bureau of Prisons for a term of 292 months.  As to

10   Count 2, the defendant is hereby committed to the custody of the

11   Bureau of Prisons for a term of 292 months.  As to Count 3, the

12   defendant is committed to the custody of the Bureau of Prisons

13   for a term of 292 months.  The sentences imposed in Count 1, 2

14   and 3 are to run concurrently.

15           Upon release from imprisonment, the defendant shall be

16   placed on supervised release for a term of ten years as to

17   Count 1, ten years as to Count 2, and ten years as to Count 3,

18   all of which are to run concurrently.

19           Within 72 hours of release from the custody of the

20   Bureau of Prisons, the defendant shall report in person to the

21   probation office in the district to which he is released.

22           Upon release from imprisonment, it is recommended that

23   the defendant abide by the standard conditions of supervision

24   pursuant to 18, United States Code, Section 3563(b), and, in

25   addition, the following conditions.  The defendant shall not

1   commit another federal, state or local crime.  The defendant

2   shall not unlawfully possess a controlled substance.  The

3   defendant shall not possess a firearm, ammunition, destructive

4   device or any dangerous weapon.

5         Pursuant to the 1994 Crime Bill, the defendant shall

6   submit to one drug test within 15 days of placement on supervised

7   release and at least two periodic drug tests thereafter as

8   directed by the United States Probation Office.

9         The defendant shall cooperate in the collection of his

10   DNA as directed by the probation office.

11         Should the probation office feel additional testing

12   and/or counseling is necessary, the defendant will participate in

13   any such program as directed by the United States Probation

14   Office.  Should the probation office feel that mental health

15   evaluation or treatment is necessary, the defendant shall

16   participate in any such program as directed by the probation

17   office.

18         No fine is recommended due to the defendant's lack of

19   assets.  The Court is imposing a special mandatory assessment of

20   one hundred dollars per count for a total of three hundred

21   dollars pursuant to 18, United States Code, Section 3013.  The

22   defendant is remanded to the custody of the Federal Bureau of

23   Prisons to commence service of his sentence.

24         Now, Mr. Henderson, I need to advise you that you have

25   the right to appeal your conviction and sentence in this matter.

1   If you're unable to afford the services of an attorney to handle

2   your appeal, a lawyer will be appointed for you.  If you cannot

3   afford it, a transcript of the record of this case will be

4   prepared for appeal at the government's expense.  You have ten

5   days from this date to file your notice of appeal.

6           Do you understand that, sir?

7           THE DEFENDANT:  (Nodding head.)

8           MR. JOHN:  Yes, sir.

9           THE COURT:  Do you understand, Mr. Henderson?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  The Court orders that the presentence

12  report be placed in the record of this proceeding under seal.

13          Is there anything else the Court need consider in this

14  matter from the government's perspective, Mr. Grayson?

15          MR. GRAYSON:  No, Your Honor.

16          THE COURT:  From the defendant's perspective, Mr. John?

17          MR. JOHN:  No, Your Honor.  Thank you, sir.

18          THE COURT:  All right.  You're all dismissed.

19                          (Proceedings adjourned.)

20                      —   —   —

21

22

23

24

25

```
 1                  UNITED STATES DISTRICT COURT

 2                 WESTERN DISTRICT OF LOUISIANA

 3                 LAFAYETTE-OPELOUSAS DIVISION

 4

 5   UNITED STATES OF AMERICA      :
                                   :
 6   vs.                           :   DOCKET NUMBER 05-60040-01
                                   :
 7   KEITH ROMAN HENDERSON         :
     _____

 8

 9                     CERTIFICATE OF REPORTER

10           I, LaRae E. Bourque, Official Court Reporter for the

11   United States District Court, Western District of Louisiana,

12   do hereby certify that the foregoing 22 pages are a true and

13   accurate transcript of the proceedings had in this matter,

14   as hereabove set forth, and that I have no interest of any

15   nature whatsoever regarding the ultimate disposition of this

16   litigation.

17           I further certify that the transcript fees and format

18   comply with those prescribed by the Court and the Judicial

19   Conference of the United States.

20

21

22                          /s/_____
                               LARAE E. BOURQUE, RPR, CRR
23                             Official Court Reporter

24

25
```