UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 05-60040 |
| | CIVIL ACTION NO. 08-656 |
| VERSUS | JUDGE MELANCON |
| KEITH ROMAN HENDERSON | MAGISTRATE JUDGE HANNA |

*REPORT AND RECOMMENDATION*

Before the court is plaintiff Keith Roman Henderson's Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Rec. Doc. 147).  The motion is opposed.

*Background and Argument*

Keith Roman Henderson was indicted on July 13, 2005, for Count 1, Conspiracy to Distribute Cocaine Base (Crack), in violation of 21 U.S.C. § 846 (50 or more grams); Count 2, Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) (approximately 128.3 grams); Count 3, Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) (approximately 124.9 grams).   On December 14, 2005, Henderson was charged by superceding indictment with the original three counts and an additional Count 4, Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) (approximately 119.14 grams); and Count 8, Forfeiture, 21 U.S.C. § 853, of a 2000 Ford Ranger pickup truck.[1]

---

[1] *Superseding Indictment* (Rec. Doc. 60).

On April 21, 2006, Keith Henderson was convicted and found guilty on Counts 1, 2 and 3, but was found not guilty on Count 4. His brother and co-defendant, Lionel Joseph Henderson, was convicted and found guilty of Counts 1 and 2, but was found not guilty on Counts 3 and 4, and not guilty on additional counts brought solely against him for alleged firearm offenses.[2] Lionel Henderson was sentenced to life imprisonment.[3] Keith Henderson was sentenced to 292 months of imprisonment per count to run concurrently, plus an additional 10 years of supervised release.[4]

In his motion, defendant argues his trial counsel was ineffective for failing to voir dire and subject the government's witnesses, confidential informant James Legarde, New Orleans narcotics agent Ricky Jackson, and Drug Enforcement Agent William Johnson, to a Daubert[5] hearing relative to their providing opinion testimony that the substance involved in transactions between defendant and his brother Lionel was "crack cocaine" or "cocaine base." Henderson argues "[t]hese witnesses were clearly not qualified to render such a scientific expert substance opinion which was the basis of the evidence the jury relied on to reach its verdicts. . . ."[6] Henderson further argues as follows:

---

[2]*Verdict Form* (Rec. Doc. 100).

[3]*Judgment in a Criminal Case* (Rec. Doc. 116).

[4]*Judgment in a Criminal Case* (Rec. Doc. 113).

[5]Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).

[6]*Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Rec. Doc. 147), p. 3.

In this case, neither the jury or any facts admitted by defendant in a guilty plea established beyond a reasonable doubt whether the mixture or substance contained 50 grams or more of actual weight of cocaine base or crack, to support the Ten year Mandatory Minimum Statutory Sentence, pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), by expert testimony using Congress' fixed Standard of Weights and Measures, mandated under Article I, Section 8, Clause 5, of the United States Constitution, pursuant to evidence admissible under *Daubert, supra.* Under 18 U.S.C. § 3583(c0(2), for Modification of an Imposed Term of Imprisonment, this Court must hold a DAUBERT SENTENCING WEIGHT HEARING, pursuant to *Crawford v. Washington*, 541 U.S. 36, 158 L.Ed.2d 177, 124 S.Ct. 1354 (2004), and the Sixth Amendment right to a jury as the fact-finder for sentence enhancement, even the statutory mandatory minimum of 18 U.S.C. §841(b)(1)(A)(iii), under **Apprendi**.[7]

Henderson argues trial counsel was also ineffective because he failed to object to the amount of cocaine, 11.76 kilograms, he was listed as accountable for on the  pre-sentence investigation report (PSR).   Specifically, Henderson argues 11.34 kilograms of the total of 11.76 kilograms defendants was held responsible for distributing in the PSR was attributed to the testimony of confidential informant James Legarde, as follows:

James Legarde, a Drug Enforcement Administration informant, testified at trial about his history of drug transactions with Keith Henderson and his brother, Lionel Henderson, in the Amelia, Louisiana area.  He testified that between April 2003 and February 2005, he purchased two (2) to three (3) ounces of cocaine base on two(2) to three (3) occasions weekly from Keith Henderson, or from Lionel Henderson if Keith Henderson could not be reached.  The period from April 2003 until February 2005 is approximately one hundred (100) weeks.  Based on two (2) purchases weekly, Legarde purchased cocaine base from Keith Henderson and Lionel Henderson on approximately two hundred (200) occasions.  If Legarde purchased two (2) ounces of cocaine base on each occasion, he would have purchased a total of

---

[7]*Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Rec. Doc. 147), p. 9.

four (400) ounces, which is the equivalent of 11.34 kilograms of cocaine base.[8]

Keith Henderson argues counsel for his co-defendant and brother, Lionel Henderson, filed an objection to the PSR's inclusion of the 11.76 (net 11.34) kilograms of cocaine base in determination of the base offense level, which was sustained by the court, but did not affect his two concurrent life sentences.[9]  However, Keith Henderson argues his attorney did not object to the inclusion of the 11.34 kilograms in his PSR, which resulted in a base offense level of thirty-eight (38).  This higher base level, Henderson argues, resulted in an incorrect and prejudicial sentence.

Keith Henderson appealed his conviction and sentence and Lionel Henderson appealed his sentence.[10]  The United States Court of Appeals for the Fifth Circuit affirmed the convictions and sentences of the defendants, issued as mandate on October 25, 2007.[11]  Keith Henderson objected to the district court's adoption of the PSR's drug quantity on appeal, and the Fifth Circuit ruled in pertinent part as follows:

> Any amount of cocaine base greater than 1.5 kilograms results in a base offense level of thirty-eight.  U.S.S.G. § 2D1.1(c)(1).  Keith Henderson challenges the district court's adoption of the PSR's determination that he was responsible for 11.76 kilograms of cocaine base.  He claims the PSR relied on the "uncorroborated testimony of the impeached and discredited CI, James Legarde."

---

[8]*Presentence Investigation Report* (Rec. Doc. 112), p. 5.

[9]*Id.*, p. 4.

[10]See *Notices of Appeal* (Rec. Docs. 117, 120).

[11]See *Judgments* (Rec. Docs. 141, 142).

Keith Henderson made no objections to the PSR.  If a defendant does not object to portions of the PSR and provides no evidence in rebuttal, "the district court [is] certainly free to adopt the findings of the [PSR] without more specific inquiry or explanation."  *United States v. Mueller*, 902 F.2d 336, 346 (5th Cir. 1990).  Furthermore, a review of the record shows that the district court did not err in adopting the factual determinations of the PSR.  Keith Henderson argues that his acquittal on count four, which was the drug distribution charge related to July 13, 2005, indicates that the jury questioned Legarde's credibility.  However, the jury convicted the Hendersons of drug distribution in counts two and three, where the net weight of the cocaine base was determined to be 128.3 grams and 124.9 grams, respectively.  The most plausible explanation for the acquittal on count four is that the net weight of the cocaine base was 46.6 grams, under the fifty grams required for conviction.  There is no basis in the record to question the district court's and the PSR's reliance on Legarde in determining drug quantity, particularly since the PSR's calculated amount of 11.76 kilograms was 10.25 kilograms more than necessary to assess Keith Henderson with the same base offense level.[12]

### *Applicable Law and Discussion*

### *Scope of §2255 Relief*

The scope of relief afforded under §2255 is extremely narrow.  It is "reserved for

transgressions of constitutional rights and for a narrow range of injuries that could not

have been raised on direct appeal and would, if condoned, result in a complete

miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir.1992);

United States v. Acklen, 47 F.3d 739, 741 (5th Cir.1995).  "We apply this rigorous

standard in order to ensure that final judgments command respect and that their binding

effect does not last only until "the next in a series of endless post-conviction collateral

---

[12]*Judgment* (Rec. Doc. 142), p. 12, 13.

attacks."  United States v. Shaid, 937 F.2d 228, 231-232 (5th Cir.1991), *cert. denied*, 112

S.Ct. 978 (1992).

       Section 2255 provides four grounds for relief:

1.      that the sentence violates the Constitution or other federal law;
2.      that the court lacked jurisdiction;
3.      that the sentence exceeded the maximum allowed by law; or
4.      that the sentence is otherwise "subject to collateral attack."

28 U.S.C. §2255.

       Section 2255 does not contain an exhaustion requirement, but a petitioner may not

collaterally attack a conviction until it has been affirmed on appeal absent exceptional

circumstances.  Fassler v. United States, 858 F.2d 1016, 1019 (5th Cir. 1988) (*per

curiam*).  *See also* Section 2255 Rules, note 1, R. 5 advisory committee's note ("orderly

administration of criminal law precludes considering such a motion absent exceptional

circumstances").

       Failure to raise a claim at trial or on appeal generally results in a waiver of the

claim.  United States v. Frady, 456 U.S. 152, 162-66 (1982).  A defendant must show

"cause" for his procedural default and "actual prejudice" resulting from the alleged error.

Id. at 170-171; Shaid, 937 F.2d at 232.  This "cause" and "prejudice" test must be

satisfied even if the defendant alleges fundamental constitutional error.  Murray v.

Carrier, 477 U.S. 478, 493, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).  There are three

recognized exceptions to the cause and prejudice requirement:

1.      In "extraordinary cases" where a constitutional error has probably resulted in the conviction and incarceration of someone who is actually innocent

(Carrier, 106 S.Ct. at 2649; Shaid, 937 F.2d at 232);

2.      when the government fails to object to the consideration of newly raised issues (United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996); and

3.      for certain constitutional claims that may only be adequately addressed on collateral attack, such as ineffective assistance of trial counsel.  United States v. Riascos, 76 F.3d 93, 94-95 (5th Cir. 1996).

To prevail on an ineffective assistance of counsel claim, a petitioner must establish two things: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).  The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  Id. at 688.  The court's scrutiny shall be "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689-90.  See also Marler v. Blackburn, 777 F.2d 1007, 1010 (5th Cir. 1985).

The Strickland court further outlined the extent of prejudice that must be established by the defendant:

> [A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  Cf. United States v. Morrison, 449 U.S. 361, 364-65 (1981).

Strickland, supra, at pages 691, 694-95; see also Taylor v. Maggio, 727 F.2d 241 (5th Cir.

1984); United States v. Diaz, 733 F. 2d 371 (5th Cir. 1984).

A habeas court must be careful not to second-guess legitimate strategic choices made by defense counsel which under the light of hindsight seem ill-advised and unreasonable. Sawyer v. Butler, 848 F. 2d 582, 587-88 (5th Cir. 1988).

Conversely, the court may dismiss a §2255 motion which raises claims previously raised on direct appeal. United States v. Santiago, 993 F.2d 504, 506 (5th Cir. 1993). An exception may be made if the movant relies upon an intervening change in the law or newly discovered evidence.

### *Failure to Request a Daubert Hearing*

Henderson argues his attorney was ineffective for failing to request a Daubert hearing at trial to challenge the testimony of James Legarde, Ricky Jackson, and William Johnson that the substance involved in the transactions was "crack cocaine" or "cocaine base." In order to prevail, Henderson must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Because both Strickland factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." Strickland, 466 U.S. at 689-94.

The undersigned finds counsel was not ineffective in failing to request a Daubert

hearing for the government's witnesses Legarde, Jackson, or Johnson, as these witnesses were not experts whose testimony was subject to Fed. R. Evid. 702, but were instead lay witnesses. A lay witness may identify a controlled substance. United States v. Benbrook, 40 F.3d 88, 94 (5th Cir. 1994). Moreover, scientific tests from the Drug Enforcement Agency's Dallas and South Central laboratories, not witness testimony, confirmed net weights of 128.3 grams of cocaine base in Count Two and 124.9 grams of cocaine base in Count Three of the indictment for which defendant was convicted, which is well in excess of the 50 grams of cocaine base required for conviction on Counts One, Two, and Three.[13]

An attorney cannot be found ineffective for failing to raise an meritless objection. Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995). The undersigned finds counsel's failure to request a Daubert hearing for the government's witnesses was not deficient representation and there was no prejudice to defendant.

***Failure to Object to the Drug Quantities in the PSR***

As an initial matter, the Fifth Circuit ruled that "a review of the record shows that the district court did not err in adopting the factual determinations of the PSR" and "[t]here is no basis in the record to question the district court's and the PSR's reliance on Legarde in determining drug quantity, particularly since the PSR's calculated amount of 11.76 kilograms was 10.25 kilograms more than necessary to assess Keith Henderson

---

[13] *Superseding Indictment* (Rec. Doc. 60); *Presentence Investigation Report* (Rec. Doc. 112), p. 5, 6.

with the same base offense level."[14]

A court may dismiss a §2255 motion which raises claims previously raised on direct appeal. United States v. Santiago, 993 F.2d 504, 506 (5th Cir. 1993). An exception may be made if the movant relies upon an intervening change in the law or newly discovered evidence.

At the time of sentencing, Henderson was charged with a base level offense of 38 points, which required a quantity of 1.5 KG or more of Cocaine Base.[15] This was still the law at the time of the Judgment issued by the Fifth Circuit, who reasoned there was no reason for the district court or the PSR to question the reliability of the 11.3 kilograms attributable to Legarde's testimony, in part because only 1.5 kilograms were necessary for a base offense level of 38. However, subsequent to sentencing and appeal, the guidelines were amended and the base offense level for 1.5 kilograms of cocaine base was changed to 28.[16] For a base offense level of 38, 4.5 kilograms of cocaine base were required under the amendments.[17] After the guidelines were amended, Henderson challenged his sentence based on those changes.[18] The district court acknowledged a change in the base

---

[14]*Judgment* (Rec. Doc. 142), p. 12, 13.

[15]United States Sentencing Commission, Guidelines Manual,, §2D1.1 (Nov. 2005).

[16]*Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. §3582(c)(2)*(Rec. Doc. 160).

[17]United States Sentencing Commission, Guidelines Manual,, §2D1.1 (Nov. 2007).

[18]*Motion for Modification of Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(2); Sentencing Guidelines § 201.1(C) as Amended November 1, 2007 and Made Retroactive on December*

level offense for 1.5 kilograms of cocaine base from 38 to 28, but it found no reduction in sentence was appropriate: "As defendant was held accountable for more than 4.5 kilograms of cocaine base [the amount required for Level 38], his sentencing guidelines are not affected by the amendments."[19]   Thus, as a result of the inclusion of the 11.3 kilograms, Henderson was charged with an amount of cocaine base in excess of the amounts required for a Level 38 offense, both under the old and new guidelines. However, under the new guideline amounts, the amount attributed to Henderson in excess of the level 38 offense was considerably less.  In the interest of full consideration,  the undersigned will reconsider, due to an intervening change in the law, any issues raised on direct appeal that may overlap with Henderson's ineffective assistance of counsel argument in the habeas motion.

In his motion, Henderson argues counsel was ineffective for failing to object to the inclusion of the 11.34 kilograms of cocaine attributed to him on the PSR from the testimony of Legarde.  Henderson argues his brother Lionel's PSR initially held him accountable for 11.76 grams of cocaine base, which included the 11.34 kilograms attributable to the testimony of Legarde, but his brother's counsel objected and the amount was reduced to 178.3 grams based on Lionel's conviction on Counts One (50 gram conspiracy) and Two (128.3 grams).

---

*11, 2007, Effective March 3, 2008, with Any Other Relief Available at Resentencing* (Rec. Doc. 146).

[19]*Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. §3582(c)(2)*(Rec. Doc. 160).

In its opposition, the government states the reduced amount of cocaine attributed to Lionel did not affect his life sentence and therefore the government did not object to the reduction.  However, the government argues, if it would have objected, the Court would have sustained its objection and the amount would not have been reduced.  In any case, the government admits that "the relevant conduct finding would have made a difference as to Keith Henderson. . . ."[20]

As the undersigned calculates the amounts, if the 11.34 kilograms would have been excluded from the calculation of the cocaine amounts, Henderson's offense level would only have included the following amounts:  Count 1, 50 grams; Count 2, 128.3 grams; and Count 3, 124.9 grams, for a total of 303.20.  Under the sentencing guidelines in effect at the time of sentencing, 303.2 grams would have resulted in an offense level of 34.[21]  Henderson had a criminal history category of III.[22]  His criminal history category, combined with an offense level of 34, would have resulted in a guidelines range of 188 to 235 months, instead of a guidelines range of 292 to 365 months.[23]  The court found the mandatory minimum for sentence for his offenses, due to a prior conviction, was 20 years

---

[20]*Memorandum in Support of Answer by the United States to Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255* (Rec. Doc. 151-1), p. 15.

[21]See 2D1.1(3).

[22]*Presentence Investigation Report* (Rec. Doc. 112), p. 11.

[23]United States Sentencing Commission, Guidelines Manual, §3E1.1 (Nov. 2005).

or 240 months.[24]  Keith Henderson was sentenced to the bottom range of the guidelines in effect at the time, or 292 months, or 52 months above the statutory minimum.[25]  Thus, the undersigned finds if an objection to the inclusion of the 11.34 kilograms in the PSR had been sustained, there is a reasonable probability that the result of the proceeding would have been different.  That is, Henderson would likely have been sentenced to the mandatory minimum of 240 months.  The guidelines' maximum advisory sentence for a base level 34 offense would have been 235 months, 5 months less than the statutory minimum, making it likely the statutory minimum sentence would have been imposed instead of a level 38 minimum guidelines sentence, 52 months greater than the statutory minimum of 240 months.[26]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Therefore, the issue is whether there is a reasonable probability that an objection to the inclusion of the 11.34 kilograms in Keith Henderson's PSR would have been sustained.

A review of the sentencing transcript shows that although Henderson's attorney did not denominate his arguments as an objection, he did make an argument that the PSR amounts attributable to Legarde were unreliable and unfairly considered:

---

[24]*Reporter's Official Transcript of the Sentencing Hearing Before the Honorable Tucker L. Melancon United States District Judge* (Rec. Doc. 149), p. 19.

[25]*Id.,* p. 20.

[26]Moreover, when the sentencing guidelines for crack cocaine were amended, the amended guidelines would have provided for a an offense category of Level 32 for 303 grams of cocaine base, which with a criminal history category of III, would have reduced his sentencing range to 151 to 188 months – even further below the statutory minimum.

MR. JOHN: Your Honor, I believe that when you analyze the preponderance of the evidence, which actually specifically it's an indicia of reliability is what the guideline says which has been interpreted by the Commission to be a preponderance of the evidence, I believe that the government has met that standard in everything that was placed in the report.  Particularly we're talking about the criminal history category, how that was compiled, the two points plus two more points for probation - - for an offense committed while under probation.

In addition, the calculation for relevant conduct of 11.3 kilos, both of those were based on an indicia of information that we saw no objection to raise in that form under the way it's structured, but, beyond that, we are concerned about the constitutional violence that was done to my client's right of confrontation and that's where our – and our rights to not incriminate himself in trial.

* * *

So what you have is a structure where the indicia and the preponderance trap is laid at trial because that hearsay comes in, and if you're trying to protect the rest of your case, there's no way you can attack that one fact of how this calculation was made.

If someone says I bought from someone 200 times, there's no way on earth a competent defense attorney would say, okay, I'm going to put you on the witness stand to say you didn't see him 200 times because there' just not enough days in the year.

* * *

We're asking the Court look and see that the reliability is compromised, generally speaking, because you've got to give something up that's a bigger puppy than to attack that one.  We're damned if we do and damned if we don't to attack that particular fact from getting in and being used as the basis for the - - what the sentencing guideline requires.

* * *

We filed no objection because we believe that when you boil it back down to that, there's nothing in this presentence report that wasn't brought up before and has a basis, a leg to stand on.  What the Court does is up to the Court.

So based on what, there is no objection that we believe would affect the outcome of the guidelines, and all we have to present today is some arguments about the way this thing is working post-*Blakely* for the record.

* * *

14

THE COURT: All right. Let me just say for the sanctity of the record, *to the extent there was an objection or it might be construed as an objection, the court will overrule that objection.*[27] (Emphasis added).

The defendant during his sentencing hearing also gave a statement to the Judge, as follows:

> And I just - - I don't understand like on the PSI where they use - - I think it was eleven kilograms cocaine base. Ain't no way possible that, you know, Mr. Legarde could state that, you know, that we was selling that kind of cocaine. I mean, everybody - - the jury know that Mr. Legarde's testimony - - I mean, it's hard for me to plead guilty to something that I know I didn't commit.[28]

A review of the transcript shows counsel and defendant were both voicing opposition to the inclusion of the 11.3 kilos in the PSR. However, also apparent from the transcript is that the Judge expressly stated that to the extent the opposition was an objection it was overruled.

At the sentencing of Keith Henderson's brother, Lionel Henderson, counsel for Lionel Henderson objected to, *inter alia*, Paragraph 15 on Lionel Henderson's PSR, where the 11.34 kilograms of cocaine base were to be added into the amount of cocaine for the base offense level calculation. Paragraph 15 on Lionel Henderson's report is virtually identical with Paragraph 13 on Keith Henderson's report, except the respective defendant's name is emphasized in the report relevant to him. However, a closer look at

---

[27] *Reporter's Official Transcript of the Sentencing Hearing Before the Honorable Tucker L. Melancon United States District Judge* (Rec. Doc. 149), pgs. 4 - 6.

[28] *Id.,* p. 17.

the paragraphs shows Legarde testified he bought drugs from Keith Henderson, and

"from Lionel Henderson if Keith Henderson could not be reached."[29]  Thus, it appears

Legarde testified the Keith Henderson was the primary seller and Lionel Henderson was

used as a seller only if Keith Henderson was not available.  Thus, even though the Court

found the PSR's 11.3 grams of cocaine unreliable as to Lionel Henderson, it does not

necessary follow that the Court would have also found the PSR's 11.3 grams of cocaine

unreliable as to Keith Henderson.

For the reasons given above, the undersigned finds there is no reasonable

probability that a formal objection to the inclusion of the 11.34 kilograms in Keith

Henderson's PSR would have been sustained, and therefore Keith Henderson has failed to

show any prejudice from his counsel's performance.

### *Conclusions and Recommendation*

For the reasons given above, the undersigned finds counsel for defendant Keith

Henderson was not ineffective for failing to request a <u>Daubert</u> hearing or for failing to

formally object at sentencing  to the inclusion of the 11.34 kilograms of cocaine base in

the PSR.  Therefore,

**IT IS RECOMMENDED** that Keith Roman Henderson's Petition for Writ of

Habeas Corpus Pursuant to Title 28 U.S.C. 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody (Rec. Doc. 147) be **DENIED and DISMISSED**

---

[29]*Presentence Investigation Report*  (Rec. Doc. 112), p. 5.

**WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A**

**courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Lafayette, Louisiana, this 8th day of October, 2010.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)