**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

**UNITED STATES OF AMERICA**             **CRIMINAL NO. 6:05-60040-01**

**VERSUS**

**KEITH HENDERSON**                          **JUDGE JAMES**

**GOVERNMENT'S SUPPLEMENTAL OPPOSITION
TO A REDUCED SENTENCE PURSUANT TO
SECTION 404 OF THE FIRST STEP ACT**

NOW INTO COURT, through the undersigned Assistant United States Attorney, comes the United States of America, who moves this Court to deny the motion of defendant Keith Henderson for a reduced term of imprisonment and supervised release under Section 404 of the First Step Act of 2018 (the "First Step Act"), and files this supplemental memorandum in support thereof.  Henderson contends that he is eligible for a reduced sentence because his indictment included language that tracked the relevant statute at the time and merely charged him with "50 grams of more" of cocaine base ("crack").  He asks the court to ignore the facts contained in the PSR and the additional language in the indictment that set forth the actual crack quantity attributed to the defendant, which exceeded 280 grams.  The Government contends that the latter, total, crack quantity attributed to Henderson controls for the purpose of calculating his new mandatory minimum under the First Step Act, rendering him ineligible for a reduced sentence of imprisonment and supervised release.

## I.     BACKGROUND

Henderson and a codefendant were charged in a three-count superseding indictment for offenses occurring on multiple dates. Count 1 charged conspiracy to possess with intent to distribute 50 grams or more of crack, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and Counts 2, 3, and 4 charged possession with intent to distribute 50 grams or more of crack, in violation of 21 U.S.C. § 841(a)(1). Additionally, the indictment specifically charged the *actual* amounts of crack beyond the statutory threshold.  For Counts 2, 3, and 4, that was 128.3, 124.9, and 119.4 grams of crack, respectively.   Count 1 incorporated these substantive counts by reference.  The Government filed a Section 851 notice based on Henderson's prior conviction for a felony drug offense; this filing increased his statutory penalty.

Henderson was found guilty of all counts following a jury trial.  The PSR ultimately attributed 11.760 kilograms of crack to him.  This included the 11.34 kilograms of crack that Henderson sold to a DEA informant during the conspiracy, as established through witness testimony at trial, and the distinct distribution quantities reflected in Counts 2, 3, and 4.

Based on the quantity of crack and the Section 851 enhancement, Henderson's minimum term of imprisonment for each count was 20 years and the maximum term was life imprisonment.  Based on his base offense level of 38 and his criminal history category of III, the Guidelines imprisonment range was 292 to 365 months per count. On July 28, 2006, the court imposed concurrent sentences of 296 months of imprisonment and 10 years of supervised release as to each count.  Henderson's

sentence was subsequently reduced to 240 months after the court granted a §
3582(c)(2) motion.

## II.    ARGUMENT

Henderson's mandatory minimum should remain at 20 years based on two
independent crack attributions: the 372.6 grams charged in the indictment and the
11.760 kilograms attributed to him at sentencing.  As explained above, the indictment
in this case, returned in 2005, charged distribution of more than 50 grams of crack.
It also included the actual amounts of cocaine base beyond the statutory threshold
for Counts 2, 3, and 4, which together exceeded 180 grams.  Then, at sentencing, the
court adopted the undisputed finding of the presentence report that the offense
involved more than 1.5 kilograms of crack.  Under §§ 841(b)(1)(A) and 851, the
defendant therefore faced a statutory maximum penalty of life imprisonment, and a
mandatory minimum term of 20 years' imprisonment.

Henderson is not eligible for relief under Section 404 of the First Step Act,
which authorizes retroactive application of the Fair Sentencing Act of 2010, because
the same statutory penalties applied to his offense both before and after the Fair
Sentencing Act.  The Fair Sentencing Act increased the threshold crack quantity for
a § 841(b)(1)(A) offense to 280 grams, but given that the quantity involved in this case
far exceeds that amount, the statutory penalties remain the same.

Henderson insists, however, that he is eligible because the indictment
specifically charged an offense involving only 50 grams of crack, and under the Fair
Sentencing Act, the penalties for that quantity are lower: a maximum of 40 years and

a minimum of five years, under Section 841(b)(1)(B).[1]  He further contends that application now of higher penalties based on the court's original quantity finding at sentencing would violate *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013).  These arguments fail as they are defeated by the pertinent statutory language and extensive precedent.  The Government charged 50 grams in the original indictment only because that was the pertinent statutory threshold at the time.  Applying that artificial quantity now in this case would create a gross disparity with similarly situated offenders charged after the Fair Sentencing Act was adopted in 2010, defeating the plain Congressional intent in the First Step Act of assuring like treatment of like offenders.  As will be explained, the First Step Act does not permit that result.

Pursuant to 18 U.S.C. § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed except that (1) . . . (B) the court may modify

---

[1] For offenders sentenced before the effective date of the Fair Sentencing Act, August 3, 2010, § 841(b)(1)(A) applied to an offense involving 50 grams of crack or more, and required a mandatory minimum sentence of 10 years' imprisonment (increased if the defendant had one or two prior felony drug convictions) and permitted a maximum sentence of life. Section 841(b)(1)(B) applied to an offense involving 5 grams of crack or more, and required a mandatory minimum sentence of 5 years' imprisonment (increased to 10 years if the defendant had a prior felony drug conviction) and permitted a maximum sentence of 40 years (increased to life if the defendant had a prior felony drug conviction).  Under the Fair Sentencing Act, the thresholds were changed to 280 grams under § 841(b)(1)(A) and 28 grams under § 841(b)(1)(B).  Both before and after the Fair Sentencing Act, the Government charged and proved only the threshold quantity required by the statute (*i.e.*, under § 841(b)(1)(A), 50 grams before the Act, and 280 grams after; or, under § 841(b)(1)(B), 5 grams before the Act, and 28 after).  Once the threshold quantity is established by the jury's verdict or defendant's plea, the court then has discretion to impose a sentence within the applicable statutory maximum, and to find sentencing facts by a preponderance of the evidence, in accord with *United States v. Booker*, 543 U.S. 220 (2005).

an imposed term of imprisonment to the extent otherwise expressly permitted by statute …" The relevant statute here—the First Step Act—does not permit relief in this case.

Section 404(b) of the First Step Act provides:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed.

Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 …, that was committed before August 3, 2010." Section 404(c) makes clear that any sentence reduction is discretionary, stating, "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

A straightforward reading of Section 404 calls for the court to make two sequential determinations: first, whether it may impose a reduced sentence, and second, if so, what sentence would have been appropriate had the Fair Sentencing Act been in effect at the time the defendant committed his crime.   Here, the defendant's claim fails at the first step (and at the second step, too).

Section 404(b) authorizes a sentence reduction only if the court previously imposed a sentence for a "covered offense."  A "covered offense," in turn, is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 …, that was committed before August 3, 2010."   First Step Act § 404(a).   The statute thus keys eligibility not on the

- 5 -

defendant's statute of conviction, but on the specific "violation" that the defendant "committed." And a "violation" qualifies as a "covered offense" only if the "statutory penalties for" that violation were "modified by sections 2 or 3 of the Fair Sentencing Act."

By referring to a "violation" that was "committed" on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), for instance, the Supreme Court held in the context of 18 U.S.C. § 1964(c) that the term "violation" "refers only to a failure to adhere to legal requirements," not a criminal conviction. The Court explained that when Congress wishes to refer to "prior convictions, rather than prior criminal activity," it uses the term "conviction," not "violation." *Id.* at 489 n.7. And in *United States v. Hayes*, 555 U.S. 415 (2009), the Court held that a statute defining a prior conviction for a "misdemeanor crime of domestic violence" referred in part to the defendant's actual conduct, not the statutory elements of the crime, when it described the prior offense as one "*committed by* a current or former spouse, parent, or guardian." *Id.* at 426 (quoting 18 U.S.C. § 921(a)(33)(A));[2] *cf. Nijhawan v. Holder*,

---

[2] In the statute at issue in *Hayes*, the term "misdemeanor crime of domestic violence" was defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." The Court held that the domestic relation of the perpetrator need not be an element of the offense of conviction; rather, the Government may prove as a factual matter that the person who "committed" the offense at issue fell within one of the described relationships.

557 U.S. 29, 32 (2009) (holding that a statutory term describing a prior "offense" referred not to a generic crime but to the "particular circumstances in which an offender committed" that offense "on a particular occasion").

Here, Congress directed courts to assess eligibility by reference to the specific violation the defendant committed, rather than his statute of conviction.  Congress easily could have declared eligible "any defendant convicted under a statute for which the penalties were altered by the Fair Sentencing Act of 2010, so long as that defendant has not already been sentenced in accordance with that Act."  Instead, Congress focused specifically on the "violation" for which the statutory penalties were modified by the Fair Sentencing Act.  To repeat, the operative clause is: "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 … that was committed before August 3, 2010."  According to Henderson, this means that a defendant is eligible whenever the penalties set forth in a statute under which he was charged were modified, regardless of the actual facts of the offense.  But this conclusion misreads the statute, erroneously construing the phrase "the statutory penalties for which" to modify "Federal criminal statute," rather than the full phrase "a violation of a Federal criminal statute."

Henderson's construction suffers from two related infirmities.  First, if all that mattered in determining eligibility were whether the penalties associated with the defendant's statute of conviction were modified, then any defendant convicted of any drug offense under Section 841 would be eligible for a reduction, even if the offense did not involve crack cocaine.  Plainly, Congress included the word "violation" to

- 7 -

ensure that only those defendants whose penalties actually were affected by the Fair Sentencing Act would be eligible for a discretionary reduction. And second, if Henderson's construction were correct, it would make no sense for Congress to have included the word "statutory" in describing the relevant penalties. That is, if Congress intended the phrase "the statutory penalties for which" to modify only "Federal criminal statute," Congress naturally would have dropped "statutory" to avoid an immediate redundancy ("a Federal criminal statute, the penalties for which …").

Moreover, Section 404 directs particular attention to the circumstances under which the particular violation was "committed," not to the statute of conviction generically. Both Sections 404(a) and 404(b) address the date of commission, and in Section 404(a) in particular, Congress added a date-based qualifier: "that was committed before August 3, 2010." Thus, the inquiry into what counts as a "covered offense" necessarily turns on facts specific to the defendant's offense—when it was committed—and not merely the statutory definitions that appear in 21 U.S.C. § 841(b)(1).

Thus, it is clear from the text that a defendant is eligible only if the statutory penalties for his violation were modified by the Fair Sentencing Act. In other words, Congress directed courts assessing eligibility to take a case-specific approach, focusing on the actual violation at issue. Courts therefore should not blind themselves to the actual quantity of crack involved in defendants' offenses—especially if the defendant admitted or did not dispute those quantities. If, as is the case here, the defendant's "violation" involved a quantity of crack that would have

triggered the same penalty after enactment of the Fair Sentencing Act, then that defendant's "violation" is not one for which the statutory penalties were modified by the Fair Sentencing Act.  Accordingly, the court did not impose a sentence for a "covered offense," and the defendant is ineligible for a reduced sentence.

The defendant's contrary reading not only undermines the statutory text, but also conflicts with Congress's manifest intent, as it would lead to profoundly unfair and illogical disparities between defendants charged before and after the Fair Sentencing Act.  There is no dispute that Congress, in enacting Section 404 of the First Step Act in 2018, was concerned about a particular class of cocaine base defendants: those whose statutory penalties would have been lower but for the fortuity that they were sentenced before August 3, 2010, and therefore could not take advantage of the Fair Sentencing Act.  *See Dorsey v. United States*, 567 U.S. 260 (2012).  For instance, if a crime involved 200 grams of crack, and the defendant was sentenced under Section 841(b)(1)(A) before August 3, 2010, a court should consider whether to grant a reduced sentence, as the Fair Sentencing Act places the 200-gram offense in Section 841(b)(1)(B).  This relief puts the offender in an identical position to those sentenced after August 3, 2010.  If, however, the original crime involved at least 280 grams of crack, the defendant's violation would have triggered the same Section 841(b)(1)(A) penalties both before and after the Fair Sentencing Act.  If such a defendant had been sentenced after the Fair Sentencing Act, all agree that he could not obtain a discretionary reduction of sentence today.  But under the defense approach, had that same defendant been sentenced before the Fair Sentencing Act took effect, he would now be entitled to a discretionary reduction of sentence.  Nothing

- 9 -

in the text or legislative history of the First Step Act suggests that Congress would have countenanced this asymmetry, which is entirely unfair to defendants sentenced after enactment of the Fair Sentencing Act.

This case illustrates the point.  As explained, the defendant's offense indisputably involved more than 280 grams of crack, calling for the maximum penalties under the drug-trafficking statute.  Every crack offender charged with and convicted of such a crime since August 3, 2010, has been sentenced under that same provision.  If the defendant here were to receive a sentence reduction based on the fiction that his offense involved only 50 grams of crack, his statutory sentencing exposure would be lower than that faced by everyone who was charged with the same crime after August 3, 2010.  The purpose of the First Step Act was to reconcile the disparity between those sentenced before the Act and those sentenced afterwards.  It would turn that goal on its head to instead afford greater relief, untethered to any actual facts, to earlier offenders.

To make matters worse, under Henderson's approach, nearly *every* defendant charged under Sections 841(b)(1)(A) or (b)(1)(B) before the Fair Sentencing Act would now be eligible for a sentence reduction.  Before the Fair Sentencing Act, there was no reason for any prosecutor to allege in an indictment more than 50 grams for a subsection A offense or more than 5 grams for a subsection B offense.  Under the Fair Sentencing Act, however, those specific quantities—50 grams and 5 grams—are treated less severely.  Thus, under the defense view, nearly every defendant charged under those statutes would be treated differently from identically situated defendants charged after the Fair Sentencing Act became effective, even if their

- 10 -

violations involved crack quantities substantially exceeding the new statutory thresholds.  Henderson does not, and cannot, offer any justification for the mass disparity he seeks, or any explanation of why Congress would have intended such an odd result.

Instead, Henderson suggests that denial of eligibility at this time, resting on the factual determinations made at the original sentencing, would violate the rulings in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), that any fact increasing either a statutory maximum or mandatory minimum penalty must be charged in an indictment and found by a jury or admitted by the defendant.[3]  But these cases do not apply here, because the First Step Act authorizes a court only to "reduce" a sentence, not increase it, and further makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."  First Step Act § 404(c).

The situation matches that in *Dillon v. United States,* 560 U.S. 817 (2010). There, the Court considered a motion for sentencing reduction under 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) allows a court to reduce a sentence, in its discretion, upon adoption of a sentencing guideline amendment designated by the Sentencing Commission as retroactive.  The Commission's policy statement implementing § 3582(c)(2) decreed that a court could not, except in limited, specified circumstances,

---

[3] In fact, *Alleyne* applied to very few, if any, defendants who might benefit from the First Step Act.  Any defendant sentenced before August 3, 2010, and whose conviction became final before *Alleyne* was decided on June 17, 2013, was subject to the rule of *Harris v. United States*, 536 U.S. 545 (2002), that a jury need not find a quantity increasing a mandatory minimum sentence, a decision later overruled in *Alleyne*.

- 11 -

reduce a sentence below the range set by the amended guideline provision. Defendants objected that a further reduction should be allowed under *Booker v. United States*, 543 U.S. 220 (2005), which rendered the guidelines advisory to remedy a violation of *Apprendi*.

The Supreme Court disagreed.  It stated that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding."  Rather, it allows courts to "reduce" a sentence of imprisonment in limited circumstances identified by the Sentencing Commission.  The Court explained:

> Given the limited scope and purpose of § 3582(c)(2), we conclude that proceedings under that section do not implicate the interests identified in *Booker*.  Notably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled.  We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments.    Rather,    § 3582(c)(2)    represents    a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.
>
> Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt.  Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.

*Id.* at 828.  This reasoning applies with full force here.  Retroactive application of the Fair Sentencing Act is not constitutionally compelled, but rather is an act of Congressional lenity.  That is because, as an ordinary rule and absent a Congressional declaration, new statutory provisions do not abrogate prior penalties. *See* 1 U.S.C. § 109.  The First Step Act solely calls for the court to determine whether the statutory penalties would have been different based on the "violation" the

defendant "committed," and if so, exercise discretion in determining whether to reduce the sentence.

Further, *Dillon* observed, "[i]t is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission.  Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon,* 560 U.S. at 825-26.

Here, the legislation at issue uses precisely the same term as that seen in § 3582(c)(2), providing authorization to "reduce" a sentence, not reimpose it.  Further, as in the § 3582(c)(2) context, the Act applies only to a narrow set of offenders, *i.e.*, those who committed crack cocaine offenses and were sentenced before August 3, 2010.  And the Act expressly states that the court is not required to reduce any sentence.[4]

_____

[4] Section 3582(c)(2), addressed in *Dillon*, states that "the court may *reduce* the term of imprisonment."   Section 404(b) of the First Step Act states that the court may "*impose a reduced sentence,*" while Section 404(c) states: "No court shall entertain a motion made under this section to *reduce* a sentence if the sentence was previously imposed or previously *reduced* in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to *reduce* the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to *reduce* any sentence pursuant to this section."  The terminology of the First Step Act follows that of Section 3582(c)(2).

Yet some defendants argue that the singular use of the term "impose a reduced sentence" in Section 404(b) mandates a *de novo* resentencing.  This argument is unpersuasive.  As one court observed, "[t]he First Step Act's use of the word 'impose' must be read in context … The First Step Act authorizes a court to 'impose a reduced sentence,' and otherwise refers to a proceeding to 'reduce' a sentence. . . . The First

Finally, the *Dillon* Court added:

> This understanding of § 3582(c)(2) as a narrow exception to the rule of
> finality finds further support outside the statute.   Federal Rule of
> Criminal Procedure 43 requires that a defendant be present at
> "sentencing," *see* Rule 43(a)(3), but it excludes from that requirement
> proceedings that "involv[e] the correction or reduction of sentence under
> Rule 35 or 18 U.S.C. § 3582(c)," Rule 43(b)(4).   Like § 3582(c)(2), Rule 35
> delineates a limited set of circumstances in which a sentence may be
> corrected or reduced.   Specifically, it authorizes a court to "correct a
> sentence that resulted from arithmetical, technical, or other clear error"
> within 14 days after sentencing, Rule 35(a), and it authorizes a
> reduction for substantial assistance on the Government's motion, Rule
> 35(b).   Rule 43 therefore sets the proceedings authorized by § 3582(c)(2)
> and Rule 35 apart from other sentencing proceedings.

*Dillon*, 560 U.S. at 827-28.   Rule 43 by its term applies to *all* motions under § 3582,

not just motions under § 3582(c)(2) based on retroactive guideline amendments.   Rule

43 therefore applies here, where the sentencing reduction is authorized by §

_____

Step Act does not call for a full or plenary resentencing."   *United States v. Potts*, 2019
WL 1059837, at *3 (S.D. Fla. Mar. 6, 2019).   Indeed, in discussing sentence reductions
under § 3582(c)(2)—which are not *de novo* resentencings—the Supreme Court has
freely used the word "impose" in relation to the new, lower sentence that results from
applying the retroactive amendment.   *See, e.g.*, *Dillon*, 560 U.S. at 827 ("Only if the
sentencing court originally imposed a term of imprisonment below the Guidelines
range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term
'comparably' below the amended range.").   Nothing in the plain meaning of the word
"impose" precludes using that word to describe a court's action in reducing a sentence
under § 3582(c), which, consistent with *Dillon*, is not subject to the rules of *Apprendi*
and *Alleyne*.

3582(c)(1)(B), and thus the Supreme Court's explanation applies here too.[5]  These proceedings, as in *Dillon*, do not warrant the application of *Apprendi* or *Alleyne*.[6]

Given the holding in *Dillon*, every appellate court to address the issue has held that a court, when determining whether a defendant is eligible for a sentencing reduction under § 3582(c)(2) based on a retroactive amendment to the narcotics sentencing guideline, which is driven by drug quantity, may make factual findings based on the original record to determine whether the offense involved a quantity that results in the same sentencing range under the amended guideline and therefore renders the defendant ineligible for relief.  *See, e.g.*, *United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *United States v. Peters*, 843 F.3d 572, 578 (4th Cir. 2016); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Anderson*, 707 F.3d 973, 975 (8th Cir. 2013); *United States v. Mercado-Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013); *United States v.*

---

[5] Many courts have held that Rule 43 applies to motions under Section 404 of the First Step Act and therefore no hearing or plenary resentencing proceeding is required. *See, e.g.*, *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *United States v. Glover*, 2019 WL 1924706, at *9-10 (S.D. Fla. May 1, 2019); *United States v. Kamber*, 2019 WL 399935, *2 (S.D. Ill. Jan. 31, 2019); *United States v. Perkins*, 2019 WL 1578367, at *3 (N.D. Iowa Apr. 3, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Shelton*, 2019 WL 1598921, at *2 (D.S.C. Apr. 15, 2019); *United States v. Coleman*, 2019 WL 1877229, at *8 (E.D. Wis. Apr. 26, 2019).

[6] The *Dillon* Court further stated: "The substantial role Congress gave the Commission with respect to sentence-modification proceedings further supports this conclusion." *Dillon*, 560 U.S. at 826.  That feature is absent here, but the remainder of the *Dillon* Court's statutory analysis fully supports the conclusion suggested here, as explained above.

*Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013); *United States v. Wyche,* 741 F.3d 1284, 1293 (D.C. Cir. 2014).  In reasoning that is directly applicable to the present situation as well, the Ninth Circuit explained:

> Typically, in those cases, neither the court nor the parties anticipate a future Guidelines amendment that will move the line and require further fact-finding to determine the defendant's eligibility for a sentence reduction under § 3582(c)(2).
>
> In those cases where a sentencing court's quantity finding is ambiguous or incomplete, a district court may need to identify the quantity attributable to the defendant with more precision to compare it against the revised drug quantity threshold under the relevant Guidelines amendment.  The Supreme Court indicated that such fact-finding was permissible in *Dillon*. *See* 560 U.S. at 828-29 (stating that "facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment").

*Mercado-Moreno*, 869 F.3d at 954.  The same fact-finding is necessary here to compare the drug quantity attributable to the defendant against the revised drug quantity thresholds under the Fair Sentencing Act, and is not restricted by *Apprendi* and *Alleyne*.  In this case, however, the fact-finding is easy: It is undisputed that Henderson's offense involved more than 11.7 kilograms of crack.

It also bears emphasis that any reduction in sentence under the First Step Act must comport with § 3582(c)(1)(B), which states, "[t]he court may not modify a term of imprisonment once it has been imposed except that … the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute …"  The First Step Act allows imposition of a reduced sentence as if the Fair Sentencing Act "were in effect at the time the covered offense was committed."  It does not "expressly" authorize the retroactive application of *Apprendi* and *Alleyne*, which are inapplicable for this reason as well.  Courts are unanimous in holding that

- 16 -

*Apprendi*[7] and *Alleyne*[8] do not apply retroactively to undermine an otherwise final judgment, and Congress did not expressly state otherwise here.  It did not decree that only this small set of offenders sentenced before August 3, 2010—those who committed crack cocaine offenses for which the statutory sentencing ranges have changed—may receive consideration under *Apprendi* and *Alleyne*, while no one else may.[9]

---

[7] *Apprendi* does not apply retroactively on collateral review.  *Love v. Menifee,* 333 F.3d 69, 73 (2d Cir. 2003); *United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003); *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001); *United States v. Brown*, 305 F.3d 304, 307-10 (5th Cir. 2002); *Goode v. United States*, 305 F.3d 378, 382 85 (6th Cir. 2002); *Curtis v. United States*, 294 F.3d 841, 842 44 (7th Cir. 2002); *United States v. Moss*, 252 F.3d 993, 997 1001 (8th Cir. 2001); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667-71 (9th Cir. 2002); *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002); *McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), consistent with all of these decisions, the Supreme Court held that *Ring v. Arizona*, 536 U.S. 584 (2002), which, in reliance on *Apprendi*, held that aggravating circumstances in a death penalty prosecution must be found by a jury rather than a judge, does not apply retroactively on collateral review.  The Court explained that judicial fact finding might actually be more accurate, and in any event does not so "seriously diminish" accuracy that there is an "'impermissibly large risk'" of punishing conduct the law does not reach. 542 U.S. at 355-56 (citations omitted).

[8] *Alleyne* does not apply retroactively on collateral review.  *Butterworth v. United States*, 775 F.3d 459, 465-468 & n.4 (1st Cir. 2015); *United States v. Redd*, 735 F.3d 88, 91-92 (2d Cir. 2013) (per curiam); *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014); *United States v. Stewart*, 540 F. App'x 171 (4th Cir. 2013) (per curiam) (unpublished); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (per curiam); *In re Mazzio*, 756 F.3d 487, 489-91 (6th Cir. 2014); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *Walker v. United States*, 810 F.3d 568, 575 (8th Cir. 2016); *Hughes v. United States*, 770 F.3d 814, 817-19 (9th Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (per curiam); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014).

[9] In contrast, where Congress authorizes *de novo* resentencing, it states that authority explicitly.  *See, e.g.*, 18 U.S.C. § 3742(f) and (g) (resentencings on remand following direct appeal); 28 U.S.C. § 2255(b) (resentencings in habeas context).

This Court therefore can and should determine whether Henderson's violations involved quantities that would have triggered the same penalties had the Fair Sentencing Act been in effect. Here, it is evident that the same sentencing range would have applied, and Henderson is not eligible for relief.

While the district courts have not uniformly adopted the Government's approach (or any other approach, for that matter), several courts have persuasively approved the position set forth here. Judge Hinkle, for example, in a lengthy opinion in *United States v. Blocker*, 2019 WL 2051957 (N.D. Fla. Apr. 25, 2019), observed that the defense position "would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants." *Id.* at *5. The court identified another absurdity in the defense position:

> Similarly, the Fair Sentencing Act was intended to lower the sentencing disparity between crack and powder, changing the 100-to-1 drug-amount ratio to approximately 18-to-1. The First Step Act was intended to give that same benefit to earlier crack defendants. The offense-controls theory [determining eligibility based on actual conduct] accomplishes that result. But if sentences for crack offenses are now lowered based on the indictment-controls theory [looking only to the charge in the indictment], an enormous disparity will be created in the opposite direction. Many defendants who committed crack offenses prior to adoption of the Fair Sentencing Act will be subject to lower penalty ranges than defendants who committed offenses involving the same amount of powder.

> Consider, for example, two defendants, one who conspired in 2007 to distribute 5 kilograms of powder, and the other who conspired to distribute 5 kilograms of crack, both with two prior felony drug convictions. In 2007, before adoption of the Fair Sentencing Act, both would have been subject to mandatory life sentences—the powder defendant because the offense involved 5 kilograms or more, and the crack defendant because the offense involved 50 grams or more. The indictments would have tracked the statute, so the powder defendant's

- 18 -

indictment would have charged 5 kilograms or more of powder, and the crack defendant's indictment would have charged 50 grams or more of crack.  If both were convicted, both would have faced mandatory life sentences.

Under the offense-controls theory, nothing would change.  Both defendants would still be subject to mandatory life sentences, just as two defendants who committed the same offenses today would be subject to mandatory life sentences.[10]  There is no reason to believe Congress intended any different result.

But under the indictment-controls theory, the crack defendant would now face a minimum of only 10 years, not life, because he would be treated as having committed an offense involving only 50 grams of crack—not 280 or more as required to trigger the life sentence.  This would be the result even though the offense actually involved 5 kilograms of crack and the government could prove it.  The powder defendant, in contrast, would continue to serve the mandatory life sentence, because nothing in the Fair Sentencing Act or First Step Act allows a sentence reduction for a defendant whose offense involved only powder.  Congress could not have intended to treat crack defendants this much more favorably than powder defendants.

*Id.* at *6; *see also United States v. Russo*, 2019 WL 1277507, at *1 (D. Neb. Mar. 20, 2019) ("[T]he Court cannot conclude that the First Step Act anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the Fair Sentencing Act.  If the Court were to engage in such a re-sentencing, applying other laws and Guidelines that have been changed since Russo's original sentencing, it would work an injustice to offenders

---

[10] Actually, under Section 401 of the First Step Act, the mandatory penalty in this hypothetical would be 25 years for offenders sentenced after December 21, 2018.  But that provision does not apply retroactively to anyone sentenced earlier, and thus does not detract from the force of Judge Hinkle's explanation.

sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010").

Several other courts thus far have agreed that eligibility is determined based on the actual quantity involved in the offense. *See United States v. Banuelos*, 2019 WL 2191788 (D.N.M. May 21, 2019) (agreeing with the government's quantity argument; to avoid disparity, would also deny relief as a matter of discretion); *United States v. Haynes*, 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019); *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *cf. United States v. Glover*, 2019 WL 1924706, at *7 (S.D. Fla. May 1, 2019) (Lenard, J.) (holding that *Apprendi* does not apply to a resentencing under § 404); *United States v. Washington*, 2019 WL 2410078, at *2 (S.D. Fla. June 7, 2019) (Rosenberg, J.) (denying motion to reduce term of supervised release, holding that the First Step Act does not permit reconsideration of "extraneous" issues such as application of *Apprendi* and *Alleyne*).

A fair number of other courts have disagreed and determined eligibility based only on the pre-Fair Sentencing Act quantity charged in the indictment.[11] Most of

---

[11] *See United States v. Allen*, 2019 WL 1877072, at *3 (D. Conn. Apr. 26, 2019); *United States v. Razz*, 2019 WL 2204068, at *7-8 (S.D. Fla. May 22, 2019) (Lenard, J.); *United States v. Anderson*, 2019 WL 2410077, at *1 (S.D. Fla. June 7, 2019) (Rosenberg, J.); *United States v. Dodd*, 2019 WL 1529516, at *2-3 (S.D. Iowa Apr. 9, 2019); *United States v. Boulding,* 2019 WL 2135494 (W.D. Mich. May 16, 2019) (Jonker, C.J.) (holding with no statutory analysis that anyone convicted under 841(b)(1)(A) or 841(b)(1)(B) is eligible for consideration); *United States v. Broussard*, 2019 U.S. Dist. LEXIS 72844, at *5-6 (D. Minn. Apr. 19, 2019); *United States v. Paulino*, 2019 WL 2437214 (D.N.M. June 11, 2019); *United States v. Simons*, 2019 WL 1760840, *6 (E.D.N.Y. Apr. 22, 2019); *United States v. Martin*, 2019 WL 1558817, *3 (E.D.N.Y. Apr. 10, 2019); *United States v. Rose*, 2019 WL 2314479, at *3-5 (S.D.N.Y. May 24, 2019) (Caproni, J.); *United States v. Martinez*, 2019 WL 2433660 (S.D.N.Y. June 11, 2019) (Rakoff, J.); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Jones*, 2019 WL 2480113 (E.D.N.C. June 11, 2019); *United*

these decisions, however, present little or no reasoning, and the few that do are unpersuasive. For instance, in a statement relied upon by many courts, the district court in *United States v. Davis*, 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), simply declared reliance on the "plain language" of the First Step Act, adding, "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act," without any assessment of the statutory analysis presented here. *Id.* at *2-3.

Only the court in *United States v. Rose*, 2019 WL 2314479 (S.D.N.Y. May 24, 2019), engaged the statutory text, albeit unpersuasively. *Rose* focused on the relevant language—"a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 … that was committed before August 3, 2010"—and stated:

> The Government's reading of § 404(a) depends on two erroneous interpretative choices. First, the Government construes the dependent clause, "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" (hereinafter "penalties clause"), as modifying the noun "violation," rather than modifying the phrase "Federal criminal statute." Next, the Government construes "violation" to mean the actual conduct underlying the offense, rather than the elements of the offense. When given its most natural reading, the "penalties" clause modifies the adjacent noun phrase, "Federal criminal statute."

---

*States v. Pugh*, 2019 WL 1331684, at *3 (N.D. Ohio Mar. 25, 2019) (Gaughan, J.); *United States v. Stone*, 2019 WL 2475750 (N.D. Ohio June 13, 2019) (Nugent, J.); *United States v. Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019); *United States v. Stanback,* 2019 WL 1976445, at *3 (W.D. Va. May 2, 2019) (Urbanski, C.J.); *United States v. Laguerre*, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019) (Dillon, J.); *United States v. Pride*, 2019 WL 2435685 (W.D. Va. June 11, 2019) (Jones, J.); *United States v. Glore*, 2019 WL 1060838, at *6 (E.D. Wis. Mar. 6, 2019); *United States v. Shaw*, 2019 WL 2477089 (W.D. Wis. June 13, 2019); *see also United States v. Francis*, 2019 WL 1983254, *2 (S.D. Ala. May 3, 2019) (declining to look to original findings to determine statutory penalties, but relying on original findings to assess amended guideline range).

*Rose*, 2019 WL 2314479, at *3.

That is not persuasive.  The term, "the statutory penalties for which were modified," more naturally relates to the entire phrase, "a violation of a Federal criminal statute," than to only the final four words.  As explained earlier, that is the better reading for multiple reasons.  First, if one construes the phrase "the statutory penalties for which" as modifying only "Federal criminal statute" and not the full phrase "a violation of a federal criminal statute," then every defendant convicted under Section 841, for any drug offense, would be eligible for a discretionary resentencing.  Second, this construction renders the word "statutory" redundant.  Third, the passage in full refers to a "violation … that was committed," terminology that, as explained earlier, the Supreme Court has understood as referring to actual conduct, not statutory elements (*Rose* does not address that precedent).  Fourth, and most significantly, in the relevant context, the only sensible interpretation is that "statutory penalties" relates to each violation.  Posit, for instance, a person who before August 3, 2010, was charged with and admitted an offense involving ten kilograms of crack cocaine.  The Fair Sentencing Act did not change the statutory penalties for that substantial crime, and in fact any person sentenced for exactly the same crime after August 3, 2010, would be subject to the same penalties that applied earlier.  The *Rose* interpretation, however, would hold that the pre-August 3, 2010, offender may receive a lower sentence, just because the penalties for one "Federal criminal statute" in the abstract were altered.  As explained throughout this brief, that result is manifestly at odds with Congressional intent.

- 22 -

For all of these reasons, the grammatical analysis presented in *Rose* is not persuasive.  Rather, the phrase, "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010," is a restrictive clause that applies to the full phrase, "a violation of a Federal criminal statute," as that reading is the only sensible interpretation in light of the manifest Congressional intent to treat identically offenders who were sentenced before and after passage of the Fair Sentencing Act.[12]

In *United States v. Allen*, 2019 WL 1877072 (D. Conn. Apr. 26, 2019), the court did focus on "the purpose underlying the First Step Act," stating "that Congress wanted to further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact.  *See Dorsey*, 567 U.S. at 268. Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties." 2019 WL 1877072, at *3.  But it in no way advances the remedial purposes of the Act to afford greater relief to a defendant than he would have received had his sentence been

---

[12] This would hold even if the *Rose* analysis had more grounding in rules of grammar than it does.  It is long settled that the "'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'" *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012), citing *Costello v. INS*, 376 U.S. 120, 122-26 (1964)).  "It has often been said that punctuation is not decisive of the construction of a statute … Upon like principle we should not apply the rules of syntax to defeat the evident legislative intent." *Costanzo v. Tillinghast*, 287 U.S. 341, 344 (1932). *See also W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 510 (1945) (Murphy, J., dissenting) ("To sacrifice social gains for the sake of grammatical perfection is not in keeping with the high traditions of the interpretative process.").

imposed after enactment of the Fair Sentencing Act. Rather, it is the Government's position here that advocates and urges like treatment of like offenders, consistent with Congressional purpose, with relief afforded to those whose statutory sentencing ranges were in fact lowered by the Fair Sentencing Act, and denied to those whose ranges are unaffected.[13]

*Allen* also suggested that *Apprendi* and *Alleyne* should apply, stating, "Congress legislates in the context provided by constitutional principles." *Id.* at *4. Likewise, another court stated, "Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so." *United States v. Stanback,* 2019 WL 1976445, at *3 (W.D. Va. May 2, 2019). But as explained above, under the constitutional landscape in recent years, *Apprendi* and *Alleyne* do not apply retroactively to offenders whose judgments were final before those decisions were announced. It is the denial of relief here—like the denial of relief under *Booker* that the Supreme Court affirmed in *Dillon*—that is in fact consistent with recent law. As explained above, it should not be concluded that Congress meant to afford such retroactive relief to a limited set of crack offenders that is not extended to anyone else.

In *United States v. Pierre*, 2019 WL 1495123 (D.R.I. Apr. 5, 2019), the district court took another tack, stating:

---

[13] To date, courts have reduced the sentences of over 1,200 offenders under Section 404, almost all with the consent of the Government, given that many pre-2010 offenders were serving sentences based on actual crack quantities that are subject to lower penalties under the 2010 law.

The Government's approach, while reasonable, is problematic in several ways.  First, it effectively requires the Court to employ a prosecutor-friendly "way-back machine" to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect.  For example, here, the Court is not confident that a well-counseled defendant caught with 28.77 grams of crack cocaine and a reasonable prosecutor from this District would have reached a plea deal of 28 grams or more of crack cocaine, thereby triggering the mandatory minimum by a mere .77 grams of crack cocaine.  Indeed, it seems likely in this Court's experience the parties would have agreed to a plea to a lower quantity.

*Id.* at *5. In *Blocker*, the court effectively rebutted that view, stating:

Had the indictment charged the higher amount of crack—280 grams—on count one, it might or might not have affected Mr. Blocker's decision to plead guilty.  The government would have relied on the same drug-amount evidence it relied on at that time and that it now relies on in response to the motion to reduce the sentence.  Mr. Blocker might or might not have admitted that the conspiracy involved at least 280 grams of crack.  Had he denied it, the government might or might not have been able to prove it beyond a reasonable doubt.

It may not be possible now, after the fact, to resolve with certainty the question about what would have happened.  But courts routinely resolve issues on which certainty is elusive, including issues like this one.  Thus, for example, courts routinely must decide what would have happened when addressing ineffective-assistance-of-counsel claims on motions under 28 U.S.C. § 2255 or on petitions for writs of habeas corpus under 28 U.S.C. § 2254.

*United States v. Blocker*, 2019 WL 2051957, at *4 (N.D. Fla. Apr. 25, 2019).  In the present case, there is no uncertainty.

Finally, courts have cited the rule of lenity.  *See Allen*, 2019 WL 1877072, at *3; *Pierre*, 2019 WL 1495123, at *5.  But "[a]pplication of the rule of lenity requires more than a difficult interpretative question.  Rather, '[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.'"  *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010), *citing Muscarello v. United*

*States*, 524 U.S. 125, 138-39 (1998) (citation omitted).  The rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). For all the reasons stated earlier, there is no such grievous ambiguity in the First Step Act.  To the contrary, all tools of statutory interpretation point to the conclusion that an offender whose crack quantity supports the same penalty range under the Fair Sentencing Act that was applied at the original sentencing proceeding is not eligible for relief.

As a final note, even if this Court disagrees with our legal assessment of eligibility, it should deny relief in the exercise of its discretion.  Given the known quantity involved in the offense, the defendant would have received the same sentence if the Fair Sentencing Act had been in effect at the time of the original sentencing and the Government had presented its case subject to the Fair Sentencing Act's requirements.  The defendant should not receive a windfall not available to defendants prosecuted for the same conduct under the Fair Sentencing Act, who received sentences based on quantity determinations keyed to the thresholds set forth in that Act.  A contrary result here would offend "the need to avoid unwarranted sentencing disparities among" similarly situated offenders under 18 U.S.C. § 3553(a)(6), and the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense" under § 3553(a)(2)(A).  *See Dorsey*, 567 U.S. at 276-79 (expressing the importance of consistency in sentencing similarly situated offenders when determining the

retroactive application of a statutory amendment).  Relief in this matter should therefore be denied.

## III.    CONCLUSION

WHEREFORE, the United States of America respectfully asks the Court to deny Henderson's motion for a reduced sentence of imprisonment and supervised release pursuant to Section 404 of the First Step Act.  Should the Court grant Henderson's motion and find him eligible for resentencing under the First Step Act, the government requests 30 days to file a sentencing memorandum based on the facts of his case.

Respectfully Submitted,

DAVID C. JOSEPH
UNITED STATES ATTORNEY


BY:    */s Cadesby B. Cooper*
CADESBY B. COOPER
NY Reg. # 5415583
Assistant U.S. Attorney
300 Fannin St., Suite 3201
Shreveport, LA 71101
(318) 676-3600 (Phone)