**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:05-CR-60040-01** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **KEITH ROMAN HENDERSON (01)** | **MAGISTRATE JUDGE HANNA** |

## <u>RULING</u>

Before the Court is a Motion to Reduce Sentence pursuant to the First Step Act of 2018, filed by Defendant Keith Roman Henderson ("Henderson"). [Doc. No. 272] The Government opposes the motion, arguing Henderson is ineligible for relief. For the reasons set forth below, the Court will GRANT the motion.

## I.
### BACKGROUND

On July 13, 2005, Keith Henderson and his brother, Lionel Henderson, were indicted on one count of conspiracy to distribute over 50 grams of cocaine base ("crack") in violation of 21 U.S.C. § 846, and two counts of distribution of more than 50 grams of cocaine base in violation of 21 U.S.C. § 841. The government subsequently filed an information of prior conviction against Henderson, asserting he was subject to an enhanced penalty under 21 U.S.C. § 841(b)(1) because of a prior state felony drug conviction. In a superseding indictment, both defendants were charged with an additional count of distribution of more than 50 grams of cocaine base, and Lionel Henderson was charged with possession of a firearm in furtherance of a drug trafficking crime and possession of a firearm by a convicted felon. On April 21, 2006, a jury convicted both defendants of counts one and two, and additionally convicted Keith Henderson of count three. The jury acquitted the defendants of the remaining counts.

In the Presentence Investigation Report ("PSR"), after considering Henderson's relevant conduct, the probation officer concluded that Henderson was accountable for at least 11.76 kilograms of cocaine base. Of this 11.76 kilograms, 11.34 kilograms were determined by taking into consideration the uncorroborated trial testimony of James Legarde, a DEA confidential informant who testified that from April 2003 until February 2005 (prior to becoming a confidential informant), he purchased two to three ounces of cocaine base from the defendants two to three times per week.[1] Henderson's total offense level was 38, and his criminal history category was III, resulting in a guideline range of imprisonment of 292 to 365 months. Henderson was sentenced to 296 months imprisonment.[2] On March 28, 2017, Henderson's sentence was reduced to 240 imprisonment pursuant to an amendment to the United States Sentencing Guidelines.

## II.
### APPLICABLE LAW

At the time Henderson was sentenced, distribution of 50 grams or more of cocaine base carried a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment; however, if the offender had a prior felony drug conviction, his mandatory minimum sentence increased to twenty years. 21 U.S.C. § 841(b)(1)(A) (effective November 2, 2002 to March 8, 2006). If an offense involved more than 5 grams of cocaine base, the offender was subject to a mandatory minimum term of five years imprisonment and a maximum term of

---

[1] A narcotics agent with the Terrebonne Parish Sheriff's Office testified at trial that he developed Legarde as an informant by building a drug distribution case against him. He then offered Legarde the option of operating as an informant, and in return he agreed not to refer Legarde's case for prosecution. *U.S. v. Henderson*, 250 Fed.Appx. 34, at 36-37 (5th Cir. 2007).

[2] On appeal, the Fifth Circuit found Henderson made no objections to the PSR. *Henderson* at 41. While it is true Henderson's counsel did not denominate his arguments as an objection, he did argue that the amount of cocaine base attributed to Henderson in the PSR that was based upon the testimony of Legarde was unreliable and unfairly considered. The sentencing court found to the extent the argument was an objection, it was overruled. [Doc. No. 149 at 4-6, 17].

forty years; however, if the offender had a prior felony drug conviction, his mandatory minimum sentence increased to ten years, with a maximum sentence of life imprisonment. *Id.* at § 841(b)(1)(B).

In 2010, after more than two decades of substantial criticism from the Sentencing Commission and others in the law enforcement community that the harsh treatment of crack cocaine offenses was fundamentally unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act increased the drug quantities triggering the mandatory minimum for crack offenses "from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum. *Id.* at 269. While the Act did not entirely eliminate the disparity between powder and crack cocaine, it did lower the 100–to–1 crack-to-powder ratio to 18–to–1.[3] *Id.* The Fair Sentencing Act took effect on August 3, 2010 but applied only to sentences imposed thereafter. *Id.* at 264.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine minimums established by the Fair Sentencing Act retroactive. The First Step Act provides in relevant part:

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

---

[3] The Fair Sentencing Act also eliminated the 5–year mandatory minimum for simple possession of crack. *Dorsey* at 269.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194. In this matter, the government contends Henderson did not commit a "covered offense" and therefore is ineligible for relief under the First Step Act.

**III.**
**DISCUSSION**

**A.      Eligibility**

The government first argues Henderson is not eligible for relief under Section 404 of the First Step Act, because the jury found him guilty of offenses involving 372.6 grams of cocaine base. [Doc. No. 297 at 2-3]. According to the government:

> Henderson and a codefendant were charged in a three-count superseding indictment for offenses occurring on multiple dates. . . . Additionally, the indictment specifically charged the actual amounts of crack beyond the statutory threshold. For Counts 2, 3, and 4, that was 128.3, 124.9, and 119.4 grams of crack, respectively. Count 1 incorporated these substantive counts by reference. . . .
>
> Henderson was found guilty of all counts following a jury trial. . . .
>
> . . . .
>
> Henderson's mandatory minimum should remain at 20 years based on . . . the 372.6 grams charged in the indictment. . . . As explained above, the indictment in this case, returned in 2005, charged distribution of more than 50 grams of crack. It also included the actual amounts of cocaine base beyond the statutory threshold for Counts 2, 3, and 4, which together exceeded 180 [sic] grams.

*Id.*

The government's argument contains several important factual errors. First, Henderson was charged in four counts of the superseding indictment (not three). He was convicted of counts one through three and acquitted of count four. Thus, while the jury did convict Henderson of

distribution of 253.2 grams of crack cocaine (counts two and three), it acquitted him of distribution of 119.4 grams of crack cocaine (count four). Accordingly, the jury did not specifically find and convict Henderson of offenses involving more than 280 grams of cocaine base, and therefore the Court finds the government has not shown Henderson is ineligible for relief under the First Step Act based upon the drug weight for which Henderson was convicted by the jury.

The government next argues that the definition of "covered offense" set forth in the First Step Act "keys eligibility not on the defendant's statute of conviction, but on the specific 'violation' that the defendant 'committed.'" [Doc. No. 297 at 5-6]. In other words, the government contends it is the offense conduct, and not the statute underlying a defendant's conviction and penalty that determines eligibility under the First Step Act. In this matter, because the court at sentencing adopted the PSR's finding that Henderson's offense conduct involved 11.76 grams of cocaine base – an amount far in excess of the 280-gram threshold – it is the government's position that Henderson's violation does not constitute a "covered offense."[4] The Court disagrees, as it finds the government's construction of the First Step Act's definition of "covered offense" to be problematic in several respects.

Again, Section 404(a) of the First Step Act defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." The government first argues that when Congress uses the word "violation," it is referring to specific offense conduct and not a statute of conviction. [Doc. No. 297 at 6-7]. The Court finds nothing in the text of the

---

[4] Of course, the offense conduct is determined by a court (not a jury) utilizing the "preponderance of evidence" standard. *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir.2009). "Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing." *Id.* (quoting *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir.1995)).

statute or cases cited by the government persuading it that the government's position is correct.[5]

The government next asserts, "[b]y referring to a 'violation' that was 'committed' on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted." But as one court has noted, the word "'committed' is easily read to refer solely to the timing of the conduct underlying the conviction." *United States v. Martin*, 2019 WL 2571148, *3 (E.D.N.Y. June 20, 2019). The government additionally argues that the term "statutory" (*i.e.*, "a violation of a Federal criminal statute, the *statutory* penalties for which were modified") would be redundant if "statutory" modified "statute" rather than "violation." Again, the Court disagrees. The more natural reading is that "[t]he use of the term 'statutory' simply indicates that the penalties modified must be the penalties prescribed by statute, as opposed to a change in the Sentencing Guidelines, for example." *Martin* at *3; *see also United States v. Rose*, 379 F.Supp.3d 223, *3 (S.D.N.Y. 2019) (engaging in extended textual analysis and determining "statutory" modifies the adjacent noun phrase "Federal criminal statute"). Further, even if the phrase "the statutory penalties for which were modified by section 2 or 3 of the First Step Act" modifies "violation" rather than "Federal criminal statute," whether "violation" refers to the elements of the statute of conviction or the offense conduct would still be ambiguous.[6] However, the rule of lenity requires that the ambiguity must be resolved in Henderson's favor. *See e.g. United States v. Davis*, 139 S.Ct. 2319, 2333

---

[5] In support of its argument that "violation" refers to offense conduct rather than the statute of conviction, the government cites *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985) and *United States v. Hayes*, 555 U.S. 415 (2009). However, the Court finds the following cases undercut the government's position: *Torres v. Lynch*, 136 S. Ct. 1619, 1624 (2016) ("The substantive elements 'primarily define[] the behavior that the statute calls a 'violation' of federal law."); *Carr v. United States*, 560 U.S. 438, 446 (2010) ("For a defendant to violate this provision, . . . the statute's three elements must be satisfied in sequence, culminating in a post-SORNA failure to register.") (internal punctuation omitted).

[6] *See* n.5, *supra*.

(2019) ("ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor").[7]

Most importantly, the government's proposed construction and approach would premise the availability of a sentence reduction "on uncharged conduct not considered by the grand jury" *Martin* at *2, in violation of the constitutional rule that any fact increasing a mandatory minimum must "be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 112, 115-16.[8] Any interpretive uncertainty here must be resolved against the government "under the rule, repeatedly affirmed, that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 229 (1999) (internal quotation marks omitted); *see also Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (courts assume Congress "legislates in the light of constitutional limitations"). Illustrative of this problematic approach is the government's final argument that even if the Court disagrees with the government's construction of the statute, the Court should exercise its discretion and deny a reduction because the government would have charged Henderson with a drug quantity

---

[7] The government's approach is problematic in another way, in that "it effectively requires the Court to employ a prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect." *United States v. Pierre*, 372 F.Supp.3d 17, 22 (D.R.I. 2019); *accord Martin* at *3 (such an approach would be "especially problematic where the quantity of drugs at issue is at the margins").

[8] The government contends because the constitutional rule of criminal procedure first set forth in *Alleyne* in 2013 – *i.e.*, that any fact increasing a mandatory minimum must be submitted to the jury and found beyond a reasonable doubt – was not made retroactive to cases on collateral review, and because Congress did not expressly authorize its retroactive application in the First Step Act, that constitutional rule cannot be considered here. [Doc. 297 at 16-17]. The Court disagrees. *See e.g. Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) (Declaring a rule nonretroactive does not imply "that the right at issue was not in existence prior to the date the 'new rule' was announced. . . . [T]he source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule."); *Martin*, 2019 WL 2571148, at *2 ("While *Alleyne* and *Apprendi* do not provide retroactive relief, Congress did intend to apply current statutory penalties retroactively, and, we can assume, current constitutional protections.")

exceeding 280 grams had he been charged after passage of the Fair Sentencing Act. [Doc. No. 297 at 26]. This appears to be the approach taken in *United States v. Blocker*, 378 F.Supp.3d 1125 (N.D. Fla. 2019). However, it has been rejected by numerous other courts. For example, in *United States v. Dodd*, the court reasoned:

> [S]uch a speculative claim is insufficient. Many things might have been different if this crime had been committed and charged years later or the Fair Sentencing Act had been passed years earlier, and the Court is unwilling to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered.

*United States v. Dodd*, 372 F.Supp.3d 795, 799 (S.D. Iowa 2019); *accord United States v. Ancrum*, 2019 WL 2110589, *4 (W.D. Va. May 14, 2019). The Court finds the reasoning of the latter line of cases persuasive, and therefore it declines to presume that the Government could and would have been successful in proving, beyond a reasonable doubt, that indispensable element of the criminal offense. Indeed, in this matter, the government did not prove to a jury, beyond a reasonable doubt, that Henderson possessed more than 280 grams of crack cocaine in light of Henderson's acquittal of count 4.

Having dispensed with these arguments, in sum, the Court finds nothing in the text of statute, the legislative history or jurisprudence indicating Congress intended to limit the Court's authority to "impose a reduced sentence" under the First Step Act beyond the limits expressly set forth therein, namely (and as pertinent here), "a Federal criminal statute [*i.e.* 21 U.S.C. § 851], the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." This interpretation comports with the vast majority of courts that have addressed this issue which have likewise found the language of the First Step Act indicates Congress' intent to tie eligibility to a defendant's statute of conviction rather than his or her offense conduct. *See e.g.*, *United States v. Davis*, 2019 WL 1054554, *2 (W.D.N.Y. March 6, 2019); *Rose*, 379 F.Supp.3d 223, *5

(collecting cases); *United States v. Allen*, -- F.Supp.3d --, 2019 WL 1877072, \*3 & n.4 (D. Conn. April 26, 2019) (collecting cases); *U.S. v. Lutcher*, 2019 WL 3006414, \*3 (E.D.La. July 10, 2019); *cf. United States v. Whitmore*, 573 Fed.Appx. 24, 25-26 (2nd Cir. 2014). For all of the reasons, the Court finds the statute of conviction – not the offense conduct – controls and therefore, Henderson is eligible for relief.

**B.    Scope of Review**

What courts may consider in deciding whether to modify a sentence under the First Step Act is an open question with diverging opinions. While some courts have declined to consider the sentencing factors set forth in Section 3553(a),[9] others have rejected that approach.[10] Section 404(b) of the First Step Act permits "[a] court that *imposed* a sentence for a covered offense . . . [to] *impose* a reduced sentence." 132 Stat. 5194. [11] The Court finds its authority to grant relief under the First Step Act is grounded in Section 3582 of United States Code Title 18, which permits a court to "modify an *imposed* term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B) (emphasis added). Section 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of *imposing* an appropriate sentence." 18 U.S.C. § 3661. Section 3553(a) is triggered when a court is "determining the particular sentence to be *imposed*." *Id.* at § 3553(a). Section 3582(a) directs courts to Section 3553(a) "if a term of imprisonment is to be *imposed*." *Id.* at § 3582(a). The Court assumes Congress used the term "impose" in Section 404(b) consistently

---

[9] *See e.g. United States v. Martin*, 2019 WL 2289850, \*3-4 (E.D.N.Y. May 29, 2019); *United States v. Martin*, 2019 WL 1558817, \*4 (E.D.N.Y. April 10, 2019).

[10] *See e.g. Rose*, 379 F.Supp.3d 223, \*8.

[11] All emphasis in this paragraph has been supplied by the Court.

with other sentencing statutes. *Rose* at \*7-9; *cf. U.S. v. Lightfoot*, 724 F.3d 593, 598-99 (5th Cir. 2013) (when modifying a term of imprisonment pursuant to § 3582(c)(1)(B) for substantial assistance, a court is not required to consider the § 3553(a) factors, but declining to resolve whether a court may consider those factors). The Court agrees with the analysis of *Rose* and its conclusion that "[t]he text of the First Step Act, read in conjunction with other sentencing statutes, requires the Court to consider all relevant facts, including developments since the original sentence." *Rose* at \*7. Accordingly, the Court now determines the scope of relief warranted for this particular defendant.

## C. Relief Granted

Henderson requests the Court reduce his sentence to time served. Based upon the facts found by the jury, if Henderson were sentenced today he would be accountable for 253.2 grams of cocaine base. His statutory mandatory minimum sentence would be five years, up to a maximum of forty years imprisonment. 21 U.S.C. § 841(b)(1)(B). He would not be subject to the enhancement for a "prior conviction for a felony drug offense," because the First Step Act amended section 841 and now requires that the predicate offense must constitute a "serious drug felony." Henderson's predicate offense, possession of codeine, would not qualify as a "serious drug felony," because he served no term of incarceration.[12] FIRST STEP ACT OF 2018, Sec. 401, PL 115-391, December 21, 2018, 132 Stat 5194. However, that provision of the First Step Act was not made retroactive. *Id.* Therefore, due to Henderson's prior felony drug conviction, his current statutory mandatory minimum sentence is ten years, up to a maximum of life imprisonment, to be

---

[12] A "serious drug felony" requires, *inter alia*, that "the offender served a term of imprisonment of more than 12 months." 21 U.S.C. § 802(57). Henderson was sentenced to five years imprisonment, all of which was suspended, and three years of supervised probation were imposed. [Doc. No. 112 at 10].

followed by a mandatory minimum term of eight years of supervised release. His current guideline range would be 235 to 293 months imprisonment.

Henderson was detained on July 15, 2005 and has now been incarcerated for approximately 14 years (*i.e.*, 168 months). At the time of sentencing, Henderson was 26 years old; he will be 40 in October. His criminal history is not what this Court would characterize as significant, and there is no indication of any violent behavior. Henderson has a supportive wife, family and friends. He has four children, one of whom was born during his incarceration. He has not seen his children in eight years. Henderson's mother is in poor health and unable to travel, and therefore she too has been unable to see her son in eight years. Henderson's family and friends have obtained possible employment opportunities for Henderson upon his release. During his incarceration, Henderson has made great strides at rehabilitation and has received only two incident reports. [Doc. No. 282].

The Court finds a non-guideline sentence is warranted in this matter.[13] Henderson has served 168 months (*i.e.*, 14 years) of his 240-month sentence. The Court finds a sentence of fourteen years is a substantial prison term, commensurate with the crime Henderson committed. After a review of the sentencing transcript, the Presentence Investigation Report, and all briefing and supporting exhibits submitted in connection with this motion, the Court finds a sentence of

---

[13] According to a report by the United States Sentencing Commission, "courts often sentence [] offenders to the statutory mandatory minimum term of imprisonment regardless of the applicable guideline range." U.S. Sentencing Comm'n, *An Overview of Mandatory Minimum Penalties in the Federal Criminal Justice System*, (July 2017), at p. 47, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170711_Mand-Min.pdf (last visited July 11, 2019). In Fiscal Year 2016, 75.1% of all offenders were subject to a mandatory minimum penalty at sentencing and had a guideline minimum that was above the applicable statutory mandatory minimum. In these cases, 41.7% of offenders were sentenced within the guidelines, 2% were sentenced above the guideline range, and 56% were sentenced below the guideline range. Of those sentenced below the guideline range, 19.4% were given a below guideline sentence due to a government sponsored variance, and 36% were given a below guideline sentence due to a non-government sponsored variance. *Id.* In Fiscal Year 2017, 50% of defendants sentenced in this District for drug trafficking offenses received a guideline sentence, and 50% received a below guideline sentence. *See* U.S. Sentencing Comm'n, *Statistical Information Packet Fiscal Year 2017, Western District of Louisiana* (2017), at 18-19: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2017/law17.pdf (last visited July 11, 2019).

time served is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.[14] Accordingly,

IT IS HEREBY ORDERED that the Motion to Reduce Sentence [Doc. No. 272] is GRANTED, and the Court will issue an amended judgment reducing Henderson's term of incarceration to TIME SERVED and reducing his term of supervised release to EIGHT (8) YEARS, with all other provisions of the judgment imposed on July 28, 2006[15] remaining in effect.

IT IS FURTHER ORDERED that the Motion to Strike [Doc. No. 301] is DENIED as MOOT.

SIGNED this 15th day of July, 2019.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[14] The only argument the government makes bearing on an appropriate sentence is that granting any reduction would "create a gross disparity with similarly situated offenders charged after the Fair Sentencing Act was adopted in 2010." [Doc. No. 294 at 4]. However, the government's position is premised upon its argument that Henderson should be held accountable for more than 280 grams of cocaine base, and thus, it is not utilizing a comparable group of offenders. More importantly, the Court finds a reduction in Henderson's sentence would lessen the disparity between Henderson and his co-defendant, Lionel Henderson. Lionel Henderson was convicted on Counts 1 and 2 (*i.e.*, conspiracy to distribute 50 grams or more of cocaine base and distribution of 128.3 grams of cocaine base), but due to two prior convictions for felony drug offenses, Lionel was sentenced to mandatory term of life imprisonment. On January 17, 2017, President Obama commuted his sentence, and he was released from Bureau of Prisons' custody on May 17, 2017.

[15] *See* Doc. No. 113.